[No. 11993. Department One. September 16, 1914.]

CHARLES M. SCRIBNER et al., *Respondents*, v. E. E. PALMER,
                    *Appellant*.[1]

FRAUD—MISREPRESENTATIONS—KNOWLEDGE OF FALSITY—COMPLAINT
—SUFFICIENCY. A complaint sufficiently alleges knowledge of the
falsity of representations inducing an exchange of real properties,
where it alleged that defendant represented that an option contract
which plaintiffs were induced to take as part payment for their land
had been investigated by him and was first-class, gilt-edged security,
that there was no doubt but that the payments would be made as
provided in the contract, as the party obligated thereby was abun-
dantly able to make the payments and pay the interest thereon, that
by reason of the alleged facts and on account of the intimate rela-
tions with defendant and their confidence and belief in his integrity,
plaintiffs relied on the representations and consented to make the
trade, and paid defendant a commission for his services, when in
fact the representations were false and the option contract was
worthless as security; since, although the better practice is to
charge *scienter* directly, it is sufficient if the facts alleged import
knowledge.

SAME—EVIDENCE—ADMISSIBILITY. In an action for fraud in in-
ducing an exchange of properties, by reason of misrepresentations
of a broker respecting the security of an option contract taken as
part payment for the purchase price of plaintiffs' land, a letter and
stock certificate sent to plaintiffs some time after their knowledge
of the fraud, the letter stating that the stock was given to plaintiffs
for the mistake which had been made, are admissible as showing the
intimate relation existing between the parties.

FRAUD—MISREPRESENTATIONS—EVIDENCE — SUFFICIENCY. There is
sufficient evidence to show fraud on the part of a broker, where it
appears that, to induce plaintiffs to make an exchange of properties,
he represented that an option contract on land located in a distant
state, which was offered as a part consideration for the trade, was
a gilt-edged security, that he had investigated the contract and the
financial standing of the vendees and that there was no doubt but
that the payments under the contract would be made, and that all
plaintiffs would have to do would be to collect the principal and
interest as it became due, that plaintiffs relied upon the representa-
tions of defendant, who was an intimate friend, but later ascer-

[1]Reported in 142 Pac. 1166.

tained that the contract would not be met, and that the land was worth considerably less than represented and was mortgaged for nearly its full value.

FRAUD—MISREPRESENTATIONS—DAMAGES—EVIDENCE.  In an action for fraud, brought by vendees against a broker for misrepresenting the value of property conveyed by an option contract which he induced plaintiffs to accept as part payment on a trade of properties, evidence of the market value of the land traded by plaintiffs is admissible, since the plaintiffs are not entitled to the value of their bargain, as they would have been in an action against the vendor, and as against the broker the measure of damages is the actual damages sustained, or the difference in value between the property sold and the contract which plaintiffs took relying on defendant's representations.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered November 15, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages for fraud.  Reversed.

*O. B. Setters* and *O. C. Moore*, for appellant.

*Merritt, Oswald & Merritt*, for respondents.

CHADWICK, J.—The facts, as the jury must have found them to be, are as follows: Plaintiffs, an aged couple, had lived for more than thirty years at Newman Lake, near Spokane, Washington.  They owned a tract of land consisting of about 121 acres, live stock, farm machinery, hay, grain and other personal property, all of the alleged value of $11,-380.  They were desirous of disposing of their property and investing the proceeds, and accordingly consulted with defendant, a friend of many years standing and in whom they had great confidence.  Defendant was about 45 years of age, had been active in the neighborhood in which plaintiffs lived, and had been a familiar with plaintiffs' older children.  At this time he was engaged in the real estate business at Hillyard, a suburb of Spokane.  Defendant presented a party by the name of Hodge to plaintiffs as a prospective buyer. Hodge offered in trade a house and lot in Spokane in which it was agreed that there was an equity of $3,000 over a mort-

gage of $1,500, and an option contract for land he had sold
to a man named Ball and upon which there was due in several
deferred principal payments the sum of $8,380, with inter-
est at 6 per cent per annum. The land was located in the
state of Oklahoma, and neither plaintiffs nor defendant had
any knowledge of its value, and as it transpires, defendant
had no knowledge of the financial responsibility of the ven-
dees Ball and wife. Plaintiffs were not inclined to gamble on
values and expressed some doubt as to the value of the con-
tract. They were disinclined to take it over in part pay-
ment for their land, and would not have done so but for the
fact that defendant wrote to them that he had investigated
the contract and financial standing of the Balls and that the
security was gilt edged. Later, in personal conversations,
he made like assurances, saying that there was no doubt
about Ball meeting his contract; that the option contract
was better security than a mortgage; that all plaintiffs
would have to do would be to collect the principal and inter-
est as it became due. Defendant further quieted the doubts
of the plaintiffs by telling them that he had been told that
Ball was a splendid business man; that he, Ball, had come
from Oklahoma and must have known the land or he would
not have traded for it; and that he would not make a trade
for them that he would not make for his own father and
mother if they were living. The trade was therefore con-
summated, and plaintiffs paid to defendant a fee of $250.
The payments then next due were not paid, and no response
coming from repeated letters, Mr. Scribner went to Okla-
homa and there found out that the option contract would not
be met; that the land did not exceed in value a greater sum
than $2,000, and that there was a mortgage lien against it
of some $1,500. This action was then brought against de-
fendant to recover the sum of $8,380 for the loss of the value
of the real estate contract as agreed upon between the parties
to the sale. A verdict as prayed for was returned by the
jury. Judgment followed, and defendant has appealed.

Error is alleged in, (1) that the complaint does not state facts sufficient to constitute a cause of action; (2) in admitting a letter and a stock certificate in evidence; (3) in the instructions to the jury; (4) in denying defendant's motion to dismiss at the close of plaintiffs' case, and again when all of the evidence had been taken; (5) in rejecting evidence touching the value of plaintiffs' land, and as covering the whole case, in denying a motion for a new trial and entering judgment on the verdict.

(1)  It is contended that the complaint is demurrable in that it does not allege a *scienter*. *Curtley v. Security Savings Society*, 46 Wash. 50, 89 Pac. 180. It is alleged in the complaint,

"Said defendant then falsely represented to them (plaintiffs) that said contract was a gilt edge security and stated that all they would have to do would be to collect their interest; that there was no doubt but that the payments would be made as provided in said contract, and that said Ball, the second party in said contract, was abundantly able to pay the payments provided in said contract and the interest thereon, and that it was a first class, gilt edge deal for them to take. By reason of the facts as hereinabove alleged, and on account of the intimate relations with defendant and of their faith and confidence in him, and believing in his integrity, plaintiffs relied upon defendant's said false representations, and, solely by reason thereof and relying thereon, they consented with defendant that they would make said trade, which said trade was consummated and said contract was assigned to said plaintiffs and said Spokane real estate was conveyed to said plaintiffs, subject to said $1,500 mortgage, and plaintiffs in turn conveyed their said real estate to said Hodge and turned over and transferred said horses, wagons, implements, produce, etc., in consideration thereof, and paid to defendant the sum of two hundred fifty (250) dollars as and for his commission for making said trade for them."

We think this is a sufficient allegation within the authority relied on, as well as later decisions of this court. False representations to be actionable must be made with a knowledge that they are false, or under such circumstances that the law

will impute knowledge; but it does not follow that the legal conclusion of *scienter* must be alleged in words. While it is more finished pleading to charge *scienter* directly, it is enough if specific allegations which sufficiently import knowledge are used. 8 Ency. Plead. & Prac., p. 902. In this case, plaintiffs alleged confidence in, and reliance upon, the judgment of defendant; that he stated as true that which, in the light of subsequent events, proved to be positively untrue, under circumstances which invited him to a finding and declaration of the fact and not to the hazard of an opinion. Defendant asserted, as an inducement to the trade, that the security was gilt edged, whereas it is alleged that it was worthless. This in itself is sufficient to carry the case beyond a demurrer. There would be no protection in the law if an agent, after ten days or two weeks for investigation, could report as an inducing fact that of which he was in utter ignorance. For a consideration, promised or paid, defendant put himself in a position where it was his duty to know the truth, and his conduct is measured by the same rule as one who wilfully states that to be true which he knows to be false. When defendant assumed to know the fact and knew that his assurance was the basis of the trade, he cannot be heard to say that he is not liable because he did not know. The time for him to speak was then, not now. The trend of modern authority is to break away from the more technical rules of pleading and to hold the maker of false representations to a stricter account. *Grant v. Huschke*, 74 Wash. 257, 133 Pac. 447.

(2) Some time after it had become known that plaintiffs had been defrauded, defendant wrote to Mr. Scribner as follows:

"Friend Scribner: I am this day sending you 500 shares of stock. Now Chs. this stock is selling for $1 per share. I want you to keep it and if things progress as they should this ought to bring you in $200 per year at the least calculation. Will not be bringing in until about 1½ or 2 years

but keep it don't sell it for I have put in about 16 months and I feel we are all right. I simply give you this for the mistake we made. Yours very truly, E. E. Palmer."

The letter and stock certificate were admitted over the strenuous objection of defendant. The court said, when admitting these exhibits, that they would be admitted only as tending to show an intimate relation between the parties. They were competent for this purpose.

(3) Exceptions were reserved to the instructions of the court defining fraud. As we have decided this case this assignment is not very material. Inasmuch as a new trial will have to be granted, defendant can request an instruction covering his theory of the law. Our first impression is, however, that the instruction complained of states a proper rule of law as applied to the facts in this case.

(4) The court did not err in overruling the motion for a nonsuit and in refusing to direct a verdict.

(5) We think the court erred in refusing to allow defendant to inquire into the market value of the land traded by plaintiffs to Hodge, and in instructing the jury that, in the event they found for the plaintiffs, to return a verdict for $8,380, the agreed value of the Ball contract. The court was of opinion that "this is one of the considerations where the consideration expressed was accepted as the measure, and not the actual value of the property." This would no doubt be the rule if this were a case between plaintiffs and Hodge. They were as to him entitled to their bargain at the valuation put upon it by the parties when making the trade. *Wolff v. Love*, 78 Wash. 561, 139 Pac. 597. That rule sounds in contract and does not pertain where an action is brought against an agent for deceit or negligence. Defendant did not agree to pay plaintiffs money or money's worth for the land, and the recovery, if any, must of necessity be the actual damages sustained, or the difference in value between the property sold and the contract which plaintiffs took relying upon defendant's representations. While

the authorities are not harmonious, the better rule is that, where a party fixes a value upon his property, and by fraudulent misrepresentations induces another to purchase it, and it is lost to the other party, he should not be allowed to defend by pleading his own fraud or the credulity of his victim, but should be bound by the agreed value. The parties to this action were not dealing as vendor and vendee but as principal and agent, and plaintiffs cannot sue as upon a contract for the loss of their bargain, for under the facts defendant was not a guarantor. The remedy is in tort. Defendant is answerable for the actual damages suffered, and no more. Actual damages means a just compensation for the wrong suffered.

In *Robinson Machine Works v. Vorse*, 52 Iowa 207, 2 N. W. 1108, there was a duty upon the defendant to accept none but "undoubted paper." Vorse exercised no diligence to ascertain the solvency of the purchaser but accepted worthless paper. "He surely became liable for this negligence whereby plaintiff lost its debt." In *Frick & Company v. Larned*, 50 Kan. 776, 32 Pac. 383, it is said:

"The law requires fidelity and reasonable care and diligence on the part of agents in the transaction of business for their principals. In the absence of any specific provisions as to the care of agents in ascertaining the responsibility of persons to whom sales were made on credit, they would be held to a careful examination of the credit of a proposed purchaser and to the exercise of reasonable care in ascertaining from the usual sources of information as to his ability to meet payments when they were to be made. In this case care and diligence were especially enjoined upon the agents, and while they did not become guarantors of the responsibility of the persons to whom sales were made, they bound themselves to a high degree of care and diligence in ascertaining the financial standing and ability of the persons from whom orders were taken."

See, also, *Osborne & Co. v. Rider*, 62 Wis. 235, 22 N. W. 394; 31 Cyc. 1460.

"It is the first duty of an agent, whose authority is limited, to adhere faithfully to his instructions in all cases to which they can be properly applied. If he exceeds, or violates, or neglects them, he is responsible for all losses which are the natural consequences of his acts. . . . The damages which the principal may recover in such cases are the actual damages sustained by reason of the agent's disobedience. The damages recovered are to be compensatory only." Clark & Skyles, Law of Agency, p. 875, § 384.

See, also, 31 Cyc. 1469.

Reversed and remanded for a new trial.

CROW, C. J., ELLIS, GOSE, and MAIN, JJ., concur.