### BULLARD *v.* CITIZENS' NAT. BANK.

(Division B. March 25, 1935.)

[160 So. 280. No. 31626.]

452

(Division B.   June 10, 1935.)

[162 So. 169.   No. 31626.]

Graham & Graham, of Meridian, for appellant.

Wilbourn, Miller & Wilbourn, of Meridian, for appellee.

458

462

Argued orally by **D. M. Graham**, for appellant.

**Griffith, J.,** delivered the opinion of the court.

In the fall of 1929, appellant, a widow of little or no business experience, had on deposit in bank eight thousand dollars, the proceeds of insurance, which she desired to invest in six per cent. bonds. She enlisted the assistance of her family physician who, in turn, got in touch with the officer of appellee bank in charge of its bond department. The physician disclosed to the bank

officer that neither he nor appellant had any knowledge or experience in bonds or in the purchase thereof, and that they would have to depend upon the banker and in the trust that he would offer and sell to appellant only first-class securities in which the chance of ultimate loss would be reduced to the least practicable possibility.

The bank officer suggested, and placed before the physician bonds to be selected out of the issues hereinafter named; assured the physician that they were gilt-edged and as good as gold, and that their ultimate payment was guaranteed by surety companies of large resources, well known in the business world for their solvency and general dependability. The physician did not understand and called for an explanation as to what was meant by the statement that the ultimate payment of the bonds was guaranteed by surety companies, and it was explained to him by the bank officer that this meant that if there were any default in the payment of interest or principal, resort must first be had against the principal obligors in the bonds and against all their property, after the exhaustion of which any deficiency would be made good by the surety companies mentioned, in other words, that the bonds were ultimately good and absolutely safe because of the ultimate guaranty of their payment by the surety companies.

In a day or two thereafter, the physician and the bank officer went to the home of appellant where the statements above mentioned were repeated by the bank officer, and in the presence of appellant and appellant's daughter and the physician. And relying upon said statements and undertaking to make no investigation for herself, as to which, as the seller knew, she was not personally capable, appellant delivered to the bank officer her check for the eight thousand dollars with the understanding that he would select the bonds in such an order of arrangement that the interest coupons would mature at different times throughout a year, and in an aggregate amount of bonds closely approximating the sum

aforesaid, would send her the proper sales invoices for them, and a trust receipt by which the bank would keep and retain the bonds in its vaults for her account.

Upon the return of the officer to the bank, he made out and mailed to appellant five separate sales invoices, all dated November 15, 1929, this being the actual date of the transaction, one of which invoices was for three bonds of Central Securities Company for two thousand five hundred dollars; another for one bond of National Union Mortgage Company for five hundred dollars; another for two bonds National Union Mortgage Company for one thousand dollars; another for two bonds Lookout Mountain Hotel Company for two thousand dollars; and another for two bonds town of Decatur for two thousand dollars, all these being the par value. But when the accrued interest was calculated on those selling at par and this deducted from those selling at slightly less than par, the aggregate amount was eight thousand one hundred forty-nine dollars and seventy-six cents, which difference appellant afterwards paid. Later, and on January 16, 1930, appellant purchased from the bank another bond of Central Securities Company, par value five hundred dollars, and under the influence of the representations in respect thereto above mentioned.

During the year 1930 and within less than a year after the purchases aforesaid, it was learned by the bank, which information was transmitted by it to appellant, that the Lookout Mountain Hotel Company was in financial difficulty and that a committee representing its bondholders had been organized. The bank still owned some of these bonds, and it was suggested by the bank that appellant join with it in sending their bonds to this committee, which was done. Later during 1931, similar adverse news came in respect to the Central Securities Company, and upon a similar arrangement the Central Securities bonds owned by the bank and those owned by appellant were forwarded to a bondholders' committee. Thereafter appellant inquired from time to time of the

bank as to what reports it had received from these committees; but, particularly as to the Central Securities bonds, the bank could or did give only the information that the committee was at work and that the outcome would require time and patience.

While matters thus rested awaiting some definite information, appellant learned for the first time, during the month of July, 1932, that the Central Securities Company's bonds were not guaranteed by any surety company in any substantial manner whatsoever; and she thereupon employed an attorney to go to North Carolina, where this concern had its domicile, there to make a full investigation, which investigation revealed that the guaranty upon which she relied had never had, as to these Central Securities bonds, any existence in point of fact and that the only guaranty which had any existence was of a matter merely collateral to the bonds themselves, skillfully arranged so as to make it appear that the bonds were guaranteed, when in fact they were not; and that the Central Security Company's bonds were practically worthless, if not entirely so.

Within a reasonable time after the said investigation, appellant filed her bill for a rescission and for the recovery of the full amount paid by her so far as concerned the three thousand dollars in Central Securities Company's bonds and the two thousand dollars in the bonds of the Lookout Mountain Hotel Company. She did not include in this suit the one thousand five hundred dollars National Union Mortgage Company, nor the two thousand dollar town of Decatur bonds. But about nine months after the filing of her original bill, she filed a supplemental bill bringing in for the first time the bonds last mentioned.

The bank defended by a denial that the stated representations were made by its officer, and defended further by the contention that even if the alleged representations were made, they were assertions of opinion

only, which would impose no legal liability upon the bank.

As to the representation that the bonds were gilt-edged and as good as gold, we think the contention of the bank is well taken. There is authority that such an assertion is a statement of fact and not of opinion. Scribner v. Palmer, 81 Wash. 470, 142 P. 1166, and there are cases to the contrary, as, for instance, Gleason v. McPherson, 175 Cal. 594, 166 P. 332. Without attempting an analysis of the cases from other jurisdictions, we rest our conclusion upon the observation that, at most, such a statement involves an admixture of fact and opinion, wherein it cannot be determined what is of fact and what is of opinion, nor where fact has ended and opinion has begun.

But the statement made and relied upon that the ultimate payment of the bonds was guaranteed by surety companies is an assertion of fact, for it is a matter within the range of definite and positive knowledge; and, although the assertion may have been made in good faith believing it to be true, this is immaterial when the statement was actually untrue, the legal responsibility upon the seller in such case is precisely the same as had he made the representation of fact knowing at the time that it was untrue. Alexander v. Meek, 132 Miss. 298, 96 So. 101; Fay & Egan Co. v. Cohn & Bros., 158 Miss. 733, 740, 130 So. 290.

In ruling upon the differences in legal effect, such as above noted, between assertions of opinion and statements of fact, it is not to be understood that there is any necessity that the statement, in order to be a material misstatement of fact, shall have been in any particular form of words or expression. The true inquiry is what was the sense or impression conveyed to the purchaser, and whether the sense or impression relied upon was one (a) which in view of all the circumstances was a sense or impression admissible within the bounds of reason, and (b) which in view of all the circumstances ought, as

the court sees it, reasonably to have been anticipated by the seller as likely to be derived by the purchased from the expressions used; in which connection due consideration must be given to the known relative experience and capacity of the parties, particularly as to the experience and capacity of the purchaser as known to the seller, and the likelihood also from that circumstance whether the purchaser would or would not reasonably gain the impression relied on from the expressions used by the seller in relation to the facts. 1 Black on Rescission and Cancellation (2 Ed.), pp. 384-389; cf. Nash Mississippi Valley Motor Co. v. Childress, 156 Miss. 157, 125 So. 708.

In such matters as this, it may yet be a long time before we shall in practical administration attain to the exalted ideal expressed in the ornate language of Mr. Justice STORY in Doggett v. Emerson, Fed. Cas. No. 3,960, 3 Story, 700, 733; but we can, in proper cases and upon sufficient proof, enforce the requirement as stated by our own court seventy-five years ago in Townsend v. Hurst, 37 Miss. 679, wherein the court said: "Good faith and justice require that parties making representations and holding out inducements intended to influence the action of those with whom they deal in matters of contract, and upon which they are expected to rely and do rely, shall be strictly held to make good such representations, and to fulfill the reasonable expectations thereby created. It is of the last importance that courts of equity should rigidly adhere to a rule so consonant with morality and common honesty."

The bank next contends that appellant unduly delayed her offer to rescind and her suit for that purpose. When a purchaser has been defrauded in his purchase, he may elect to retain the property and sue for damages, in which case he has the entire period allowed by the statute of limitations in which to institute his action. But if he elect to rescind, and thereby to recover the entire amount paid for the property, the established rule justly requires reasonable promptitude on his part.

Hundreds of cases and numerous texts have dealt with the latter question, but when all that is said in them is summarized, it leads to this: A purchaser who, under the actual facts, has the right to rescind must offer to do so within a reasonable time after discovery by him of those facts which justify the rescission, or within a like time after the discovery by him of facts reasonably sufficient to put him upon inquiry, which inquiry, if reasonably pursued, would have lead to a discovery by him of those facts. And thus it is that each case must rest upon its own peculiar facts upon the stated issues of reasonableness, Bonner v. Bynum, 72 Miss. 442, 446, 18 So. 82, and as to which in general the burden of proof is upon the defendant as in other instances of affirmative defenses. 3 Black on Rescission and Cancellation (2 Ed.), pp. 1481, 1621, 1622.

Applying the rule of reasonableness to the evidence in this case, we are of the opinion that appellant has not been cut off from her right of rescission as to the three thousand dollars of bonds in the Central Securities Company embraced in her original bill. We refrain from pursuing the various phases of the voluminous record which lead us to this conclusion, for to do so would unduly extend an already lengthy opinion. But, as to the two thousand dollars of Lookout Mountain Hotel Company bonds embraced in her original bill, she is not entitled to recover, because the evidence shows, without dispute, that the ultimate payment of that particular issue was in fact guaranteed by a reputable surety company, solvent and responsible at the time.

As hereinbefore stated, appellant did not bring into her original bill the bonds of the National Union Mortgage Company, nor those of the town of Decatur, and did not sue upon these two issues of bonds until about nine months after her original bill, when she did so by a supplemental bill. As to these, under the rule of reason above stated, she was too late. Her investigations made a short time before the filing of her original bill

were sufficient to have put her upon notice as to all of these bonds, with the result that she is bound by her election to retain the bonds not included in her said original suit.

It was upon the ground stated in the foregoing paragraph that the chancellor dismissed appellant's entire case. The chancellor held that the purchase of these bonds on November 15, 1929, was an indivisible contract, and that the retention by appellant of a part of the bonds embraced in that contract resulted, in legal effect, in an election to retain all of them.

The line of demarcation between divisible and indivisible contracts is often difficult to distinguish; but we find that one among the best of the tests upon that question is discernible in the discussion of it in 2 Williston on Contracts, section 863, which may be restated more briefly as follows: The inquiry is whether several bargains were made in one transaction, or whether several things were contracted for as one bargain. If several things are contracted for in one transaction, which things have no such relation to each other as that the value or price of one would be increased or diminished or otherwise materially affected by its association with the other or others, then prima facie there are several separable or divisible bargains in one transaction. That test is suitable to be applied to the transaction now before us, and applying it, we are of the opinion that the several issues of bonds are separable in the transaction and that it was not indivisible. See Ganong v. Brown, 88 Miss. 53, 40 So. 556, 117 Am. St. Rep. 731.

The purpose and effect of chapter 252, Laws 1934, requiring the chancellor upon request to make a finding of facts, is to include the opinion of the chancellor as a material part of the record. The chancellor's opinion shows that he did not make any finding of fact whether the representations which form the basis of the suit were made by the bank, although appellant made a written request upon the chancellor so to do. There is

ample evidence in the record to sustain a finding that the representations substantially as alleged by appellant were made, and apparently the chancellor assumed, for the sake of the argument, that the stated issue was proved in appellant's behalf, but then proceeded to dismiss the bill for the reasons heretofore mentioned. And in all our foregoing statement of facts we have proceeded upon the same assumption so far, but only so far, as regards the issue of misrepresentation. But it is clear from the opinion, and from the chancellor's response to appellant's request, that he did not actually decide the issue mentioned in this paragraph. The decree will, therefore, be affirmed as to all the bonds except the three thousand dollars of the Central Securities Company, and, as to those, the decree is reversed and the cause remanded in order that the chancellor may make a finding of fact upon the stated issue.

Affirmed in part and in part reversed and remanded.

**Ethridge, P. J.**, delivered the opinion of the court on suggestion of error.

An elaborate suggestion of error has been filed in this case, challenging many portions of the opinion heretofore rendered. We have carefully considered the suggestion of error, and adhere to our former holding. Certain issues were remanded to the court below for findings of fact and judgment thereon, the chancellor not having dealt with these facts in his decision in the case. It is suggested that we have made statements of fact in the opinion which might cause embarrassment to the chancellor in his finding, and it is further suggested that we should not have found facts.

The facts, as stated, were such as to show that, if believed to be true on remand, relief should be granted. Practically all the issues to be tried on the remand are in dispute, and the court below will understand that we were stating such facts in favor of the appellant which,

if found true, would entitle her to relief; but that we did not intend to make any finding of fact on these issues which would bind or embarrass the chancellor on the remand. The chancellor, of course, will hear the evidence and find the facts as in any other case, and apply the law accordingly.

Our attention has also been called to the recent case of Awotin v. Atlas Exchange National Bank of Chicago, 55 S. Ct. 674, 79 L. Ed. —; and it is contended that this case absolves the bank from liability in the transaction herein involved. The Awotin Case dealt with a statute there involved as affecting the power of a bank to make contracts of the character there prohibited, and to incur any liability in dealing with such transactions by contract. It was not intended by the court, as we understand it, to hold that the statute prohibited the bank from being liable in actions of fraud and deceit, or in actions of tort, involving misrepresentations of facts in selling its securities, or disposing of such property which it had acquired for its own use, or as agent for others. It is inconceivable to us that the federal statutes should prohibit a person dealing with a bank, and who has been misled by false representations, from holding the bank liable for such false representations as would render other persons and corporations liable in actions for fraud or torts.

The suit here is for fraud and deceit, or fraudulent representations, by which a customer was led to make an investment on the faith of such representations. We do not believe the federal court will construe the statute to prohibit recovery in such cases.

Nothing herein said is intended to establish the truth of the complainant's bill, or to decide conflicts in testimony, which are matters solely for the chancellor, on the remand, to hear and determine, subject, of course, to the right of appeal.

The suggestion of error is overruled.

**Overruled.**