453 So.2d 699 (1984)
BERKLINE CORPORATION
v.
BANK OF MISSISSIPPI.
No. 54939.
Supreme Court of Mississippi.
July 25, 1984.
Winn Davis Brown, Jr., Brown & Rutherford, Southaven, for appellant.
James Patrick Caldwell, Riley, Weir & Caldwell, Tupelo, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice for the Court.

I.
Berkline Corporation has brought this action charging that Bank of Mississippi made material misrepresentations regarding the credit worthiness of Furniture City, Inc. Berkline says that it reasonably relied upon these representations and made credit *700 sales of furniture to Furniture City and that it has suffered financial loss in consequence thereof.
The Circuit Court, sitting without a jury, dismissed the action at the end of Berkline's proof. Apparently the trial judge was of the opinion that Berkline had to prove fraud on the part of Bank of Mississippi before it could recover. Because our law recognizes in this factual setting a right of recovery upon proof of negligent misrepresentation of material facts reasonably relied upon to the detriment of plaintiff, we reverse and remand for further proceedings.

II.

A.
On June 13, 1978, Don Culbreath and others organized a Tennessee corporation known as Furniture City, Inc. Furniture City proposed to engage in the business of the retail sale of furniture and accessories in the greater Memphis area.
A few weeks later, Furniture City placed an order for the purchase of furniture from Berkline Corporation, a Delaware corporation engaged in the sale of furniture to retailers. This was Berkline's first business contact with Furniture City, and Berkline requested credit references. Furniture City's officers furnished the name of Steve Smith, an officer of Bank of Mississippi, Defendant below and Appellee here. Smith then served in the Bank's branch in Olive Branch, Mississippi.
In late July of 1978, Berkline, acting through its credit manager, Mona Edenfield, contacted the Bank and inquired regarding Furniture City. The Bank's response was in the form of a letter the contents of which we set forth in full.
 BANK OF MISSISSIPPI
 in Olive Branch
 July 31, 1978
 Mona Edenfield
 South Central Credit Manager
 The Berkline Corporation
 One Berkline Drive
 Morristown, Tennessee 37814
Dear Ms. Edenfield:
Furniture City, Inc. has an active line of credit with the Bank of Mississippi in the low six figure range. They have two deposit accounts with us. One account is a savings in the low six figure range and the other is a commercial checking account with average balances in the low five figure range. All deposit accounts and credit experience have been handled in a satisfactory manner. The principals of the corporation have, in past experience with our bank, demonstrated sound business judgement. If you have any questions, please feel free to contact us.
 Sincerely,
 /s/ Steve Smith
 Steve Smith
 Loan Officer
SS:jh
Berkline also obtained a credit report from the Lyon Furniture Mercantile Agency and another report from Dun and Bradstreet, Inc. Neither report disclosed much and the details of neither are significant here.
Thereafter Berkline honored credit orders from Furniture City and shipped merchandise to Furniture City having an approximate wholesale value of $10,000. As fate would have it, Furniture City did not pay Berkline nor apparently did it pay anyone else, for on December 18, 1978, Furniture City was named guest of honor in a petition for involuntary bankruptcy filed in the United States Bankruptcy Court for the Western District of Tennessee.
In due course Berkline received a modest distribution from Furniture City's bankrupt estate, leaving an outstanding and unpaid balance of $6,605.79.

B.
On November 5, 1981, Berkline commenced this action by filing its declaration in the Circuit Court of DeSoto County, Mississippi. In its pleadings Berkline charged that the July 31, 1978, letter contained material false statements, that the letter had induced Berkline to extend credit *701 to Furniture City, and that Berkline had suffered loss in consequence thereof. In addition to its claim for actual damages, Berkline charged fraudulent misrepresentation on the part of Bank of Mississippi and demanded punitive damages.
The Bank's answer admitted that, pursuant to the instructions of Furniture City, Berkline had made credit inquiry of the Bank and that the July 31 letter had been furnished in response. The Bank admitted that Steve Smith was a duly authorized officer in the premises and that he did in fact write the letter in question.
Answering further, the Bank averred that the contents of the letter were true and accurate at the time the letter was written, that it did not intend that Berkline act upon the letter to its detriment, that Berkline in fact relied upon other information obtained from other sources in making its credit decision, along with other defenses not pertinent here.
At trial, in addition to the facts described above, Berkline's credit manager, Mona Edenfield testified that she called the Bank on December 13, 1978, in an attempt to discuss Furniture City's default with the Bank's loan officer, Steve Smith. Ms. Edenfield was advised that Mr. Smith had left the Bank in September of 1978. Ms. Edenfield then talked with a Mrs. Hollingsworth at the Bank and gave the following testimony:
"We questioned her (Mrs. Hollingsworth) concerning the letter we received from the Bank, and at that time she told us there had been no checking and savings account in these amounts that were stated in the letter, and that the Bank was having problems also, and she referred us to the Assistant Vice President and gave us the name of Rick Caldwell. I spoke with him, and he told me at that point that the Bank had an outstanding debt of fifty to sixty thousand dollars, they were having problems, it looked very serious, and, you know, Mr. Smith was not there."
With its proof essentially in the posture recited above, Berkline rested its case. At that point, Bank of Mississippi moved the Court for entry of an order dismissing the declaration. Grounds for the motion, of course, were the Bank's contention that Berkline had failed to prove the essential elements of its claim.
After hearing full argument in the matter, the Circuit Judge sustained the Bank's motion. The Circuit Judge's bench ruling makes it clear that he regarded the claim as one for fraudulent misrepresentation, and that in order to make out a prima facie case Berkline had to prove "the elements of a fraud case". Berkline's declaration together with all claims stated therein were accordingly dismissed and final judgment was entered in favor of Bank of Mississippi. This appeal has followed.

III.
We live in a credit era. Consumers, commercial enterprises and government all operate on credit. Though attended by evils, credit makes possible a level of material well-being and economic prosperity otherwise unapproachable.
A common incident of the extension of credit is the credit reference. Consumers as well as commercial enterprises, when seeking to open a new line of credit, are regularly asked for references. Only the Government of the United States gives neither references nor collateral.
Banking institutions play a vital role in our credit economy. Consumers and commercial enterprises alike regularly give banks as credit references. Common sense suggests that the prospective debtor's bank will often be better equipped than anyone else to give creditable credit information.
Banks' motives in serving as credit references can hardly be described as altruistic, though no doubt headaches (including lawsuits such as this) attend the service. The bank gives credit information as an accommodation to its customer. The customer obviously needs credit references in order to conduct his own business on credit. By serving as a reference, the bank incurs its *702 customer's favor. The bank thus facilitates its customer's business success and, presumably, receives its own benefits from the customer's economic longevity.
Again generally speaking, banks know that the credit information they give out will be relied upon. They are in a unique position to know of the customer's credit worthiness, and they know or reasonably should know that others so perceive them.
We emphasize that the Bank of Mississippi was under no duty to serve as a credit reference for Furniture City. Upon receipt of the original inquiry from Berkline, the Bank was perfectly free to decline to divulge any information. A bank incurs no liability to anyone when it declines to act as a credit reference.
Where a bank, through one of its duly authorized officers or agents, undertakes to supply credit information, arguably gratuitously, the bank and its officers are bound to use the skill and expertise which they hold themselves out to the public as possessing. There is ordinarily no reason why factual information given by the bank should not be accurate. When a bank officer makes representations or omissions of material facts false at the time, and where that officer has not exercised reasonable care and diligence to see that the information dispensed is accurate, the bank may incur a liability.
We note and emphasize here the distinction between facts and opinions. Statements such as that made by loan officer Smith to the effect that Furniture City had an active line of credit in the low six figure range, coupled with two accounts, one in the low six figure range and the second in the low five figure range, are representations of fact which, if false at the time and negligently made, may expose the bank to liability. On the other hand, a mere expression of opinion may not be actionable. Bullard v. Citizens National Bank, 173 Miss. 450, 466, 160 So. 280, 282, suggestion of error overruled, 173 Miss. 470, 471, 162 So. 169, 169-70 (1935).
The law applicable to cases such as this requires that, in order to recover, a plaintiff such as Berkline much allege and prove by a preponderance of the evidence
(a) A misrepresentation or omission of a fact;
(b) That the representation or omission is material or significant;
(c) That in responding to the credit inquiry the bank officer failed to exercise that degree of diligence and expertise the public is entitled to expect of reasonably competent bank officers;
(d) That it reasonably relied upon the bank's misrepresentation or omission; and
(e) That it suffered damages as a direct and proximate result of such reasonable reliance.
No one Mississippi case has heretofore announced each of the elements of the negligent misrepresentation claim stated above. As all know, however, running deep in our law is the notion that a person must respond where his statements or conduct reasonably induce another to rely to his detriment. Analogous is the rule of promissory estoppel found in Sanders v. Dantzler, 375 So.2d 774, 776 (Miss. 1977) and Restatement, Contracts 2d § 90 (1981). Similarly analogous is our doctrine of equitable estoppel. See PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205-207 (Miss. 1984). We further rely upon Nevada National Bank v. Gold Star Meat Co., 89 Nev. 427, 514 P.2d 651, 77 A.L.R.3d 1 (1973); Anchor Lumber Corp. v. Manufacturers' Trust Co., 242 App.Div. 656, 272 N.Y.S. 610 (1934), not because the courts which announced these decisions have any authority in this state but because the legal reasoning they have employed is compelling.
The trial judge was obviously of the opinion that, in order to recover at all, Berkline was required to prove fraud. It is well established in this state that before one may recover on a fraud theory he must prove by clear and convincing evidence knowledge of falsity and an intention to deceive or defraud. See, e.g., Aponaug Manufacturing Co. v. Collins, 207 Miss. 460, 42 So.2d 431 (1949); Gardner v. State, *703 235 Miss. 119, 130, 108 So.2d 592, 594 (1959); Johnson v. Brewer, 427 So.2d 118, 121 (Miss. 1983). To be sure our law does recognize the viability of a claim for fraudulent misrepresentation on the part of a bank in these circumstances, provided the plaintiff alleges and proves by clear and convincing evidence the elements of a fraud claim. See Bullard v. Citizens National Bank, 173 Miss. at 466, 160 So. at 282. As indicated above, however, a plaintiff may also recover on a negligent misrepresentation theory, again, provided he can prove his claim. Because the trial judge proceeded on a fraud theory only, the judgment for the Bank must be reversed and the case remanded for further proceedings.

IV.
Upon remand the proceedings should resume at the point where they terminated at the first trial, except that the trial judge should look with favor upon any motion Berkline may offer to re-open to present evidence which has come to its attention since the first trial.
Today's decision does not preclude Bank of Mississippi from renewing its motion to dismiss once Berkline has finally rested on its case in chief. Assuming that Bank wished to assert its motion anew, the trial judge should test Berkline's proof under the rules of law articulated above. Nothing in this opinion should be taken to indicate so much as a whisper as to whether any such motion should be granted or denied.
Without prejudging or in any way attempting to anticipate the trial judge's ruling, if the Bank's motion should be denied, the Bank would then be free to go forward with its evidence and the trial would proceed to conclusion as in the ordinary course.
REVERSED AND REMANDED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE and SULLIVAN, JJ., concur.
PRATHER, J., not participating.