**CHAMPION INTERNATIONAL CORPORATION, Plaintiff,**

v.

**FIRST NATIONAL BANK OF JACKSON, Defendant.**

Civ. A. No. J85–0164(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 22, 1986.

Walker W. Jones, III, Michael B. Wallace, Jones, Mockbee, Bass & Hodge, Jackson, Miss., for plaintiff.

George R. Fair, Watkins and Eager, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause came before the court for trial on the complaint of the plaintiff, Champion International Corporation (Champion), against First National Bank of Jackson (Bank). Plaintiff contends that the Bank made negligent and fraudulent misrepresentations and demands specific performance of a contract and the establishment of a constructive trust for the benefit of plaintiff. Based on the testimony and exhibits presented at trial, the court makes the following findings of fact and conclusions of law.

Since the 1970's, plaintiff has been selling its products to New Orleans Furniture Manufacturing Company (New Orleans Furniture). Following sale of the stock of New Orleans Furniture in late 1982 to Resources Development Company (Resources), Champion began experiencing difficulty in collecting payment from New Orleans Furniture. In February 1983, New Orleans Furniture sent a letter to Champion requesting that its credit be extended to a ninety-day payment period. Nick Morris, regional credit manager for Champion, testified that he became concerned over the nature of the purchase of New Orleans Furniture[1] and his inability to obtain a financial statement from Resources. Morris did have access to an unaudited financial statement which indicated that New Orleans Furniture had incurred substantial losses the previous year. In April 1983, he called the Bank, New Orleans Furniture's principal lender, for the purpose of obtaining that information. He spoke with Dexter Barr and told him that Champion was having difficulty in collecting from New Orleans Furniture. According to Morris, Barr informed him that New Orleans Furniture had a medium seven-figure credit line with a medium six-figure amount outstanding. At trial, Morris explained that he understood this to mean that New Orleans Furniture had a credit line of three to seven million dollars and had currently borrowed five hundred to six hundred thousand dollars. Morris also stated that Barr said that New Orleans Furniture had experienced some financial difficulty but was now "out of the woods." Barr testified that he did not recall the conversation but knew that he would not have told Morris that New Orleans Furniture had a six-figure debt outstanding. Barr further stated that New Orleans Furniture appeared to be recovering from financial difficulties in April 1983 and in June or July of 1983 began to show a profit. Even though he did not ask about the purchase by Resources, Morris testified that he felt comfortable about New Orleans Furniture's status and did not limit its credit at that time.

By August 1983, Champion had not received an audited financial statement. Morris, still concerned about the status of New Orleans Furniture, called the Bank on August 9, 1983 and spoke with Thomas Darnell, the servicing loan officer of the New Orleans Furniture account. Morris testified that Darnell told him that New Orleans Furniture had an outstanding debt of 6.7 million dollars and had recently been rejected for a loan from Bank of America. Morris further testified that when he asked whether the assets of New Orleans Furniture were pledged for the debts of Resources, Darnell stated: "Not to my knowledge." Following this conversation, Champion continued to extend credit to New Orleans Furniture. Morris stated at trial that he would not have taken any different action had Darnell told him that New Orleans Furniture's assets were pledged. With these restrictions, the account was gradually brought current.

By memorandum dated November 29, 1983, Morris recommended that New Orleans Furniture's credit be limited to $50,-

---

1. Morris did not know whether the stock of New Orleans Furniture had been purchased by debt or equity. Although this information was of significance in determining the financial status of New Orleans Furniture, Morris initially neither questioned New Orleans Furniture officials about it nor investigated public records where the information was readily available.

000. Morris was still unable to obtain a copy of the June 31, 1981 audited financial report of New Orleans Furniture and also questioned the ability of New Orleans Furniture's management. In response to a threat by plaintiff to limit its credit, New Orleans Furniture gave a copy of the audit to Morris on December 13, 1983. The audit revealed the pledge of New Orleans Furniture's assets for the six million dollar debt of Resources and also indicated that New Orleans Furniture was in violation of loan agreements with the Bank. After the December 13 meeting, Morris recommended to his boss that a letter of credit be required of New Orleans Furniture. On January 13, 1984, the plaintiff did demand a letter of credit[2] and New Orleans Furniture promised that one would be forthcoming in two weeks.

On January 31, 1984, Michael Stoltz, Manager of New Orleans Furniture, asked the Bank for a letter of credit. He signed a blank letter of credit and deposited $50,000 in return for a certificate of deposit to be used as collateral for the letter of credit. Also on January 31, Thomas Darnell returned a call to Rogers. Rogers was not available and Darnell left a message. The secretary who took the message testified by deposition that Darnell told her that the letter of credit was in the mail. Darnell denied saying this and testified that he told her the letter of credit was being processed. The court credits the testimony of Darnell on this issue.

On February 5, 1984, New Orleans Furniture failed to make two major payments to the Bank. On February 6, Morris called Darnell to inquire about the letter of credit. Darnell referred Morris to John B. Tullos, another officer of the Bank. Tullos told Morris that the letter of credit had not been issued and inquired about the form desired by Champion. On that day, Morris mailed to Tullos a sample letter of credit. On February 7, the Bank lent New Orleans Furniture $250,000 secured by additional

collateral. By letters dated February 9, 1984, the Bank demanded payment of all loans. Later that day, New Orleans Furniture filed a petition in bankruptcy. On February 9 or February 10, Darnell called Morris and told him of the bankruptcy petition and that the letter of credit would not be issued.

In *Berkline Corp. v. Bank of Mississippi*, 453 So.2d 699, 702 (Miss.1984), the Mississippi Supreme Court set forth the elements necessary to support a recovery for negligent misrepresentation.

> The law applicable to cases such as this requires that, in order to recover, a plaintiff such as Berkline much [sic] allege and prove by a preponderance of the evidence
>
> (a) A misrepresentation or omission of a fact;
>
> (b) That the representation or omission is material or significant;
>
> (c) That in responding to the credit inquiry the bank officer failed to exercise that degree of diligence and expertise the public is entitled to expect of reasonably competent bank officers;
>
> (d) That it reasonably relied upon the bank's misrepresentation or omission; and
>
> (e) That it suffered damages as a proximate result of such reasonable reliance.

In *Franklin v. Lovitt Equipment Co.*, 420 So.2d 1370, 1373 (Miss.1982), the Mississippi Supreme Court explained the elements of proof for a claim for fraudulent misrepresentation.

> In order to establish fraud, the plaintiff must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

---

**2.** The delay, according to the testimony of Morris, was procrastination on the part of his superior.

■ Plaintiffs' claims for fraudulent and negligent misrepresentation revolve around the same facts. Although the elements of proof for each claim differ, both require that recoverable damages be proximately caused by reliance on the misrepresentation. *See Berkline Corp.*, 453 So.2d at 702; *Franklin*, 420 So.2d at 1373. Plaintiff is unable to identify any damages which were the result of its reliance on the April and August conversations with Barr and Darnell. According to the plaintiff, Barr misrepresented the outstanding debt of New Orleans Furniture as well as its current profitability. Plaintiff further argues that Darnell misrepresented the nature of the purchase agreement between Resources and New Orleans Furniture as well as the status of the company's loan with the Bank. By December 13, 1983, however, plaintiff knew the amount and status of New Orleans Furniture's loan with the Bank, its profitability (or lack thereof) and the nature of the sale of New Orleans Furniture stock to Resources. Because all amounts due as a result of credit extended before December 13, 1983 have been paid, plaintiff cannot recover any damages for its alleged reliance on the statements of Barr and Darnell in April and August.[3]

Plaintiff further contends that the representations made by the Bank officials on January 31, 1984 and February 6, 1984 constituted negligent and fraudulent misrepresentations. According to plaintiff's witness, Darnell informed Champion that the letter of credit was in the mail on January 31. Furthermore, plaintiff contends that the Bank had decided by February 6 not to issue the letter of credit and yet neither Darnell nor Tullos informed plaintiff of this decision and in fact implied that the letter of credit would be issued in the near future.

■ Plaintiff's claim for fraudulent misrepresentation must fail. Plaintiff did not establish that Darnell and Tullos were aware of the falsity of their statements nor that they intended for Champion to act in reliance thereon. This court credits the testimony of Bank officials that a definite decision not to issue the letter of credit was not made until after February 6, 1984. Additionally, the evidence does not show that either Darnell or Tullos was aware of reluctance on the part of other Bank officials to issue the letter of credit.

■ Plaintiff did succeed in establishing the elements necessary for negligent misrepresentation. Both Tullos and Darnell indicated that the Bank was favorably considering issuance of the letter of credit. The truth as shown at trial, however, was that other Bank officials were in fact hesitant to issue the letter of credit. The representation was material in that Champion allowed shipments and manufacture to continue after January 31, 1984, the date on which the Bank first indicated that the letter of credit would be issued at some point. Additionally, Champion accepted another order from New Orleans Furniture on that date.

The third element of proof for negligent misrepresentation focuses on the "degree of diligence and expertise the public is entitled to expect of reasonably competent Bank officers." *Berkline Corp. v. Bank of Mississippi*, 453 So.2d 699, 702 (Miss. 1984). In *Berkline*, the court discussed the role of banks in the "credit era" in which we live. *Id.* at 701. The court stated:

Where a bank, through one of its duly authorized officers or agents, undertakes to supply credit information, arguably gratuitously, the bank and its officers are bound to use the skill and expertise which they hold themselves out to the

---

**3.** This court does not find that Barr and Darnell actually made the statements as represented by the testimony of Nick Morris but merely holds that, regardless of the accuracy of Morris' understanding of the conversation, plaintiff did not rely to its detriment on those statements. The court notes that the circumstances surrounding the April and August conversations indicate misunderstanding by all involved. Additionally, the court does not determine whether all of those statements were factual or merely expressions of the opinions of the speakers. *See Bullard v. Citizens Nat'l Bank*, 173 Miss. 450, 160 So. 280, 282 (mere expression of opinion not actionable) sugg. of err. overruled, 173 Miss. 450, 162 So. 169 (1935).

public as possessing. There is ordinarily no reason why factual information given by the bank should not be accurate. When a bank officer makes representations or omissions of material facts false at the time, and where that officer has not exercised reasonable care and diligence to see that the information dispensed is accurate, the bank may incur a liability.

*Id.* at 702. Here the Bank clearly failed in its responsibility. Although, as stated previously, this failure cannot be characterized as fraud, it was negligence occasioned by lack of communication within the Bank. Between January 31 and February 9, various Bank officials were involved in different facets of the decision-making process which would ultimately determine the fate of New Orleans Furniture. These officials failed, however, to keep others informed of the status of that process. It was within this context that Tullos and Darnell represented that the letter of credit would be issued when in fact its issuance was much less certain. The Bank through its officers therefore failed in its responsibility to exercise reasonable care and diligence.

■ Plaintiff further established that it reasonably relied upon the Bank's misrepresentation in continuing to do business with New Orleans Furniture. Plaintiff is therefore entitled to recover those damages causally connected to defendant's misrepresentations between January 31 and February 9. At trial, Rogers testified that plaintiff accepted an order on January 31 from New Orleans Furniture. He calculated the damages on this order to be $2,520.00. On January 6, plaintiff had accepted another order from New Orleans Furniture, manufacture of which began on February 7. The damages relating to this order were in the amount of $4,015.23. Had plaintiff known that the letter of credit would not be issued, it could have cancelled the order and manufacture of those products and avoided the consequent losses. Accordingly, plaintiff is entitled to these amounts in damages.

■ Plaintiff also seeks damages for carloads of material represented by Invoice Nos. 242714–01, 242713–01 and 242712–01. On January 31, these carloads of materials had been manufactured in Oregon and were in transit to New Orleans Furniture. By the time plaintiff learned that the letter of credit would not be issued, the goods had travelled further east, eliminating potential western markets. The goods were eventually sold to a North Carolina company and to Champion's Atlanta office. Therefore Champion takes the position that it suffered loss in the form of reduced profit and greater shipping costs.

Only the part of that loss caused by the Bank's misrepresentation is recoverable. These three carloads of material were already manufactured and shipped when the Bank failed to inform Champion on January 31 of its hesitancy to issue the letter of credit. Champion argues that, if it had known on January 31 that the letter of credit was not going to be issued, it could have halted the shipments and arranged a sale which would have resulted in a smaller loss. While Champion clearly could have stopped the shipments, the record does not provide evidence from which the court can calculate the amount, if any, by which Champion's loss would have been reduced. In *Cain v. Mid-South Pump Co.*, 458 So.2d 1048, 1050 (Miss.1984), the Mississippi Supreme Court stated:

... [W]here it is reasonably certain that damage resulted, mere uncertainty as to the amount will not preclude the right of recovery or prevent a jury decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence—with such certainty as the nature of the particular case may permit—lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is suffi-

cient to afford a reasonable basis for estimating his loss.

In this case the extent of injury and amount of damage, in the form of loss of potential sales and resulting lower freight charges, are not easily capable of exact and accurate proof. This alone under Mississippi law does not foreclose recovery. *Id* Here the court is without the facts necessary "to make a fair and reasonable estimate" of damage. *Id.* To arrive at an amount of damage, the court would in effect be required to pull numbers out of the air to represent additional freight charges and higher purchase prices. The only testimony regarding potential customers was from Bill Rogers who stated that the market for the medium density fibreboard ordered by New Orleans Furniture was limited because other furniture manufacturers were fickle about the brand they ordered. Rogers' testimony plus the absence of proof regarding specific customers leads to the conclusion that Davis and Champion's Atlanta office were the only possible purchasers, in which case plaintiff could not complain that it suffered loss on these three carloads attributable to the Bank's misrepresentations. Accordingly, plaintiff is not entitled to damage relating to Invoice Nos. 242714–01, 242713–01 and 242712–01.

█ █ Plaintiff contends that the facts herein give rise to a constructive trust for the benefit of plaintiff. The Mississippi Supreme Court has held:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy.

*Sojourner v. Sojourner,* 247 Miss. 342, 153 So.2d 803, 807 (1963). While the standard of conduct on the part of the grantee is not clear under Mississippi law, it is clear that something more than the mere negligence found here is required. *See, e.g., id.* 153

So.2d at 808 (bad faith as would shock conscience is necessary); *Russell v. Douglas,* 243 Miss. 497, 138 So.2d 730, 734 (1962) (fraud need not be shown). "A constructive trust is a fiction of equity. It is the formula through which the conscience of equity finds expression.... The equity must shape the relief." *Sojourner,* 153 So.2d at 808–09. The court is of the opinion that under the facts presented here, equity does not call for establishment of a constructive trust.

Plaintiff's claim for specific performance must also fail. " '[S]pecific performance of a contract will not be awarded where damages may be recovered and the remedy in a court of law is adequate to compensate the injured party.' " *Weathersby v. Gore,* 556 F.2d 1247, 1258 (5th Cir.1977) (quoting *Roberts v. Spence,* 209 So.2d 623, 626 (Miss. 1968)).

It is, therefore, ordered that judgment be entered in favor of the plaintiff in the amount of $6,535.23 and in favor of defendant in all other respects.