869 F.2d 1422
 57 USLW 2565
 MSA TUBULAR PRODUCTS, INCORPORATED, a New Jersey
Corporation, Plaintiff-Appellant,
v.
FIRST BANK AND TRUST COMPANY, YALE, OKLAHOMA, an Oklahoma
Banking Corporation, and First Yale
Bancorporation, Inc., an Oklahoma
Corporation, Defendants-Appellees.
 Nos. 87-1898, 87-2103.
 United States Court of Appeals,
Tenth Circuit.
 March 20, 1989.
 
 Richard M. Meth of Kirsten, Simon, Friedman, Allen, Cherin & Linken (Harold Friedman of Kirsten, Simon, Friedman, Allen, Cherin & Linken, Newark, N.J., and Gayle L. Barrett of Crowe & Dunlevy, Oklahoma City, Okl., with him on the briefs), Newark, N.J., for plaintiff-appellant.
 John N. Hermes of McAfee & Taff (Drew D. Webb of McAfee & Taff, Oklahoma City, Okl., and Hal Wm. Ellis of Ellis, Teter and Worthington, Stillwater, Okl., with him on the brief), Oklahoma City, Okl., for defendants-appellees.
 Before LOGAN, MOORE and TACHA, Circuit Judges.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This diversity case questions whether a bank in the state of Oklahoma can become liable for giving misleading information to an entity making an inquiry into the credit worthiness of one of the bank's depositors. The Oklahoma Supreme Court has not decided this precise issue, but we believe it would answer the question in the affirmative. Oklahoma law provides that, when a person responds to a request for information, the party responding is under a duty to respond truthfully, even though that party had no duty to make disclosure in the first instance. Applying that principle to this case, we conclude when the defendant bank undertook to respond to plaintiff's inquiry, it assumed the duty to respond accurately. We therefore reverse the trial court's contrary holding.
 
 
 2
 Plaintiff, MSA Tubular Products, was asked by the president of Oil West Supply, Inc., to sell pipe to Oil West on open account. Before agreeing to the transaction, plaintiff asked Oil West for credit references. Three references, including Oil West's bank, defendant First Bank and Trust Company, were given.
 
 
 3
 Joseph Cricco, vice-president of MSA, called the Bank and asked to speak to someone who could give him credit information about Oil West. Mr. Cricco ultimately was connected with Carol Wessel, assistant to the Bank's president, Hugh Jones. When first asked for credit data, Ms. Wessel replied that she could not give that information. Apparently Mr. Cricco would not accept Ms. Wessel's answer.[1] Because of Mr. Cricco's insistence, Ms. Wessel asked Mr. Jones how to respond.
 
 
 4
 Mr. Jones said to tell Mr. Cricco Oil West had average deposits in the amount of "five figures." In the course of carrying out Mr. Jones' instructions, Ms. Wessel added her own embellishment that the deposits were in "high five figures." Attempting to commit Ms. Wessel to greater particularization, Mr. Cricco asked whether a check in the amount of $95,000 drawn on Oil West's account would clear. Ms. Wessel responded, "There would be no problem." The trial court found, at the time of this conversation, Oil West had "a history of overdrafts ... known to Hugh Jones and Carol Wessel" and Oil West's "daily balances ... were under $10,000 and were, at times, in negative numbers."
 
 
 5
 After receiving the information from Ms. Wessel, plaintiff shipped pipe on credit to Oil West. Although Oil West paid for some of those shipments, it was unable to pay for a sizable portion of the final account.[2] MSA filed the instant action claiming the Bank was liable to MSA because it negligently and fraudulently represented Oil West was creditworthy.
 
 
 6
 After a bench trial, the district court entered findings of fact and conclusions of law, ultimately holding for the Bank. The court found that plaintiff "did not request a written credit report" from the Bank, and that Mr. Cricco's inquiry was "not calculated and could not be construed as an attempt to obtain a credit report on Oil West from First Bank." The court found the Bank, through its employees, "made erroneous statements to Joe Cricco concerning the balance of the account of Oil West at First Bank." However, the court concluded, the Bank "did not have a fiduciary relationship with [plaintiff], and therefore owed no duty to [plaintiff] in the absence of a specific request for a credit report and/or credit history, to disclose information concerning the account and loans of Oil West at First Bank." The court cited no authority for its conclusions.
 
 
 7
 On appeal, the plaintiff argues that because of the reality of the present credit world and the reliance placed on credit information by parties to commercial transactions, the existence of a fiduciary relationship is not a condition precedent to liability in this case. Citing Berkline Corp. v. Bank of Miss., 453 So.2d 699 (Miss.1984), plaintiff urges that a party may proceed upon a theory of negligent misrepresentation to recover damages resulting from reliance upon misrepresentations of credit worthiness made by a bank. Indeed, the Berkline court held:
 
 
 8
 Where a bank, through one of its duly authorized officers or agents, undertakes to supply credit information, arguably gratuitously, the bank and its officers are bound to use the skill and expertise which they hold themselves out to the public as possessing. There is ordinarily no reason why factual information given by the bank should not be accurate. When a bank officer makes representations or omissions of material facts false at the time, and where that officer has not exercised reasonable care and diligence to see that the information dispensed is accurate, the bank may incur a liability.
 
 
 9
 ....
 
 
 10
 The law applicable to cases such as this requires that, in order to recover, a plaintiff ... must allege and prove by a preponderance of the evidence
 
 
 11
 (a) A misrepresentation or omission of a fact;
 
 
 12
 (b) That the representation or omission is material or significant;
 
 
 13
 (c) That in responding to the credit inquiry the bank officer failed to exercise that degree of diligence and expertise the public is entitled to expect of reasonably competent bank officers;
 
 
 14
 (d) That it reasonably relied upon the bank's misrepresentation or omission; and
 
 
 15
 (e) That it suffered damages as a direct and proximate result of such reasonable reliance.
 
 
 16
 Berkline, 453 So.2d at 702. Other courts have followed this theory of liability. See Ostlund Chemical Co. v. Norwest Bank of Jamestown, 417 N.W.2d 833 (N.D.1988); Central States Stamping Co. v. Terminal Equip. Co., 727 F.2d 1405 (6th Cir.1984); Bank of Nev. v. Butler Aviation O'Hare, Inc., 616 P.2d 398 (Nev.1980); Brayton Chemicals, Inc. v. First Farmers State Bank of Minier, 671 F.2d 1047, 1052 (7th Cir.1982).
 
 
 17
 Oklahoma courts have not had occasion to address this issue directly. In other cases involving the duty to disclose, however, Oklahoma has followed the rule that one who has no duty to speak, but makes a disclosure nevertheless, undertakes to speak truthfully. Uptegraft v. Dome Petroleum Corp., 764 P.2d 1350, 1353 (Okla.1988). One who assumes to speak when under no duty to do so cannot suppress pertinent facts or state less than the whole truth. Id. This principle furthers the rule that a person without responsibility to another has the duty to either remain silent or to tell the truth. Deardorf v. Rosenbusch, 201 Okl. 420, 206 P.2d 996, 998 (1949). The consequence of failing this duty is liability to the person who relied upon the statements made. Uptegraft, 764 P.2d at 1353.
 
 
 18
 While some courts have applied a negligence theory to the incorrect statements of persons under a duty to speak accurately, see, for example, Berkline, 453 So.2d at 702, Oklahoma has not yet followed that line of reason. Oklahoma has regarded the making of false or reckless statements as constructive fraud. Uptegraft, 764 P.2d at 1354, citing Okla.Stat. tit. 15, Sec. 59; Faulkenberry v. Kansas City S. Ry. Co., 602 P.2d 203, 206 n. 6 (Okla.1979), cert. denied, 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983).[3] The ultimate consequence is the same, however, whether recovery is predicated upon constructive fraud or the Berkline theory of negligent misrepresentation. In either case, the plaintiff must prove it relied upon the statements of defendant's employee and that the reliance was reasonable. Uptegraft, 764 P.2d at 1353; Berkline, 453 So.2d at 702.
 
 
 19
 Because the trial court found that the Bank owed no duty to plaintiff, the court did not consider the issue of reasonable reliance. Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED for further consideration in light of this opinion.
 
 
 
 [1]
 Bank's counsel suggests that Mr. Cricco embarked upon a "game" to badger Ms. Wessel into making disclosures. While the record contains evidence indicating Mr. Cricco was "rude," there is no support for counsel's accusation
 
 
 [2]
 MSA filed suit against Oil West in the Western District of Oklahoma and recovered a judgment of $104,000 on the deficiency
 
 
 [3]
 Our perception of Oklahoma law leads us to conclude the courts of that state would equate "negligent misrepresentation" with recklessness in the context of this case