SOJOURNER *v.* SOJOURNER

No. 42678 May 27, 1963 153 So. 2d 803

October 7, 1963 156 So. 2d 579

*Henley, Jones & Henley,* Hazlehurst, for appellant.

*Barnett, Montgomery, McClintock & Cunningham,* Jackson, for appellee.

JONES, J.

From a decree of the Chancery Court of Copiah County, Mississippi, sustaining a demurrer filed by appellee to appellant's amended bill of complaint, appellant appeals. Appellee cross-appeals, and alleges that the lower court erred in permitting the amended bill of complaint to be filed and in refusing to sustain appellee's motion to strike the amended bill, as not being germane to the case.

The original bill alleged that John S. Sojourner, during his lifetime, was the owner of certain lands situated in Copiah County;· that he left as his sole and only surviving heirs at law seven children, of whom Miss Myra Sojourner was one. Dan Sojourner, whose widow was the appellee, Mrs. Merle Sojourner, was also a child of the said John S. Sojourner.

The original bill alleged that prior to the death of the said John S. Sojourner, each of his children except Dan and Myra had established their own homes. Dan and Myra, both being unmarried, remained in the family home, living with their father and mother. The mother predeceased the father by some months. During the latter part of the lives of the parents, they became physically incapacitated and the complainant and her brother Dan nursed and cared for them. The other brothers and sisters recognizing this service, held a family conference on or about September 1, 1949, at the residence of C. C. Sojourner, another son, at which conference it was agreed by all such heirs that Dan and Myra would continue to reside on the property and that the

other heirs would convey their respective interests to Dan and Myra, but Dan called to the attention of the complainant and his brothers and other sisters that he was entering upon the veterans farm training program and it would be necessary for him to have legal title to said property vested in him to qualify for such training. Some of the heirs were reluctant to convey solely to Dan, but after discussion he agreed with Myra and the other owners of the property that if he were vested with full legal title thereto he would, after a period of three years when the veterans program would terminate, execute a will leaving said property to his sister Myra or give her a deed thereto; that thereupon the heirs reposing trust and confidence in Dan, and solely because they and each of them relied upon his promise, executed and delivered a quit claim deed to said lands; that said transfer was made without any consideration whatsoever, and solely for the purpose of making it possible for Dan to enter upon the training program. The bill further charged that after the expiration of the said training program, Dan advised that he was going to have the will written and executed as promised, and she relied upon such promise, having the utmost confidence in her brother; that she resided with her brother upon the property, keeping house for him, and through their joint efforts maintained and improved the house and property. The bill further charged that Dan married the appellee on or about March 21, 1958, and that Myra continued to reside in the home with her brother and sister-in-law, and continued in her household duties. Dan died intestate on or about June 30, 1960, and under the laws of Mississippi, Mrs. Merle Sojourner was his only heir at law. The bill further charged that the appellee well knew the family arrangement in regard to the said property, she having been advised as to same by her husband. The prayer of the original bill was that on final hearing the court

enter a decree that Myra was the owner of said lands and require Mrs. Merle Sojourner as trustee of said property to convey to complainant the fee simple title thereto, and decree that the said Mrs. Merle Sojourner had no interest of any kind whatsoever in said property. It also prayed for general relief.

To this original bill appellee demurred on the ground that there was no equity on the face of the bill, and that the complaint showed an express trust which would be void under Sec. 269 of the Miss. Code of 1942. They also plead by a special plea the said Sec. 269. Later an amended answer incorporating an amended demurrer was filed, adding the additional ground that the bill was barred by the statutes of limitations of the State of Mississippi, and that appellant was estopped by laches. This demurrer to the original bill was sustained, and permission granted for the filing of an amended bill.

The amended bill of complaint contained substantially the same allegations of the original bill, but with added averments therein, including an averment that at the family conference it was agreed that the heirs would convey their interest in said property to Dan and Myra as joint tenants with the right of survivorship, and that then Dan Sojourner called attention to the veterans training program. This bill further charged that Dan made a promise to the complainant and other heirs that if he were vested with full legal title thereto he would, after a period of three years, either execute a will giving the property to his sister Myra or give her a deed thereto; that it was relying upon this promise that the heirs executed the deed to Dan; that the transfer was made without any cash consideration being paid, but the real consideration was that the grantors recognized their obligation to compensate the complainant for the services she had rendered to her mother and father; that the grantors were brothers and sisters and the relationship between all the parties was unusually close and

constituted a fiduciary and confidental relationship; that Dan insisted upon them conveying the land to him to enable him to qualify for the training program and represented to all the parties that he would hold the title to said property in trust for his sister Myra, and after the three-year period of the training program had expired he would either convey said property to complainant or leave it to her by his last will and testament; that Myra had resided with her brother Dan for many years and was residing with him at the time of the conveyance, and was assured by Dan that he desired her to continue to reside on said property; that for a long period of time Dan had managed all of the business affairs of complainant and she had explicit trust and confidence in him, and she and the other grantors acted upon the basis of said representation in executing said conveyance, and except for said representation the property would have been conveyed to complainant and Dan Sojourner as joint tenants with right of survivorship.

The amended bill further charged that after the completion of the veterans training program, Dan, during his lifetime, failed to convey said property to the complainant, but she expected to find that he had left a last will and testament devising the property to her; but much to her surprise, he failed to devise the property to her; that the aforesaid conduct on the part of Dan constituted an abuse of complainant's confidence and the confidence of the grantors in said deed; that under such circumstances, the retention of the property involved in this suit by the defendant as heir at law of Dan Sojourner would be unconscionable and in violation of all principles of equity; that the conduct on the part of Dan, including his failure to carry out the representations he made, constituted fraud. Complainant charges that she has learned that it was never the intention of Dan to fulfill the representations he made to the grantors

in said conveyance; that it is necessary in equity for the court to take jurisdiction of the case and grant complainant relief in order to avoid unjust enrichment on the part of Dan and his widow. The amended bill charges, as did the original bill, that the widow had full knowledge and well knew the family arrangement in regard to the aforesaid property, and she understood that she was to have only the property that was acquired after their marriage. It was charged in the amended bill that a resulting trust was created, and the prayer was the same as in the original bill.

We do not think the grounds of the cross-appeal are well taken. The amended bill was germane to the original bill and the court was correct in allowing the amendment and in declining to strike. Secs. 389, 390, Griffith's Miss. Chancery Practice (2d ed.).

As to the statutes of limitation: The conveyance involved in this suit was made on December 27, 1949. The suit was filed February 2, 1961. The bill of complaint, however, shows that the promise was that after three years Dan would either convey the property or devise the land to Myra by will. Of course, he had the remainder of his life to execute a will. The three years would carry the start of the running of limitations at least to December 27, 1952. So the earliest at which the limitations under the ten-year statute might have run would have been ten years from December 27, 1952. Therefore, we are of the opinion that the lower court was correct in holding that the case was not barred by statutes of limitation.

The chancellor rendered a special opinion on the demurrer, holding that laches barred the suit. He based this upon the ground that Dan had died and was unable to testify. However, this Court has many times held that no period of time short of the statute of limitations can be used as supporting any laches which will constitute an equitable bar to the suit. See Waldrop

v. Whittington, 213 Miss. 567, 57 So. 2d 298, and cases therein cited.

On the question of a trust: The amended bill of complaint averred that Dan made the oral promise to execute a deed or a will leaving the land to Myra; that she had since learned that at the time of making said promise, he had no intention of performing it; that a confidential relationship existed between Dan and Myra and the other children, and Dan secured an advantage by the reliance of Myra and the other children upon the representations made by him; that this resulted in unjust enrichment of Dan; that there was a confidential relationship existing between the parties and particularly between Myra and Dan; that he had always looked after her business affairs, and it would be a breach of trust and confidence for him to be permitted to disregard the promise so made. Under these circumstances, the case of Saulsberry v. Saulsberry, 78 So. 2d 758, is in point. There this Court held under circumstances analagous to those alleged in the instant case:

"A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, to hold and enjoy. 54 Am. Jur., Trusts, Sec. 218. A constructive trust is an appropriate remedy against unjust enrichment. Ibid., Sec. 219. The mere failure to perform an agreement does not raise a constructive trust, but a breach of an agreement or promise may, in connection with other circumstances, give rise to such a trust. A distinction exists between the breach of a promise not fraudulently made and the breach of a

promise made with no intention of performing it. Ibid.,
Sec. 221.

■■■ "While a confidential or fiduciary relationship
does not in itself give rise to a constructive trust, an
abuse of confidence rendering the acquisition or reten-
tion of property by one person unconscionable against
another suffices generally to ground equitable relief in
the form of the declaration and enforcement of a con-
structive trust, and the courts are careful not to limit
the rule or the scope of its application by a narrow
definition of fiduciary or confidential relationships pro-
tected by it. An abuse of confidence within the rule
may be an abuse of either a technical fiduciary relation-
ship or of an informal relationship where one person
trusts in and relies upon another, whether the relation
is a moral, social, domestic, or merely personal one.
The origin of the confidence reposed is immaterial. A
confidential relationship within the rule need involve
neither a promise for the benefit of another nor an ex-
press fiduciary relationship.' 54 Am. Jur., Trusts, Sec.
225."

In the Saulsberry case it was also held that one
against whom the fraud or wrong doing was charged
could not place the land beyond the reach of a construc-
tive trust by conveying same to his wife. We think this
is applicable here, particularly since the bill charges
that the wife had knowledge of the trust. In 89 C.J.S.,
at page 1034, it is stated:

"It has been said that the transactions which will be
treated in equity as containing such an element of fraud,
active or constructive, as to give rise to constructive
trusts in such cases are numerous and varied; and it
has been held that a constructive trust for fraud or
wrong, being based on the equitable principle that no
one can take advantage of his own wrong, exists in
almost any case where there is a wrongful acquisition
or detention of property to which another is entitled."

In 89 C.J.S., Sec. 149, at page 1041, under the chapter on Trusts, after reciting that the mere violation of a parole promise made by grantee to reconvey to the grantor or to a person designated does not create a constructive trust in the grantee in the absence of fraud in procuring the conveyance to him, since the trust, if any, is an express one and is not enforceable under the statute of frauds, then stated:

"A constructive trust will arise, however, out of a promise to reconvey or hold in trust made in connection with the receipt of the legal title to property, provided the grantor's purpose is an honest one, where, in addition to the parol agreement or its breach, there is some element of fraud or bad faith which makes it inequitable that the grantee should hold the title absolutely and discharged of any trust. It is not necessary that actual fraud be shown for equity to regard the grantee as holding lands charged with a constructive trust and to compel him to fulfill the trust by conveying according to his engagement, but it is necessary only to establish such conduct and bad faith as would shock the conscience of the court.

"Generally, a constructive trust will be raised where at the time the promise is made the grantee does not intend to perform it, or it is intentionally false, or where confidential relationships exist between the parties and there is no other consideration for the conveyance except the promise, or where the promise is the inducing cause of the conveyance, no other consideration being given, and is relied on by the grantor, . . . . . ."

Sec. 234 of 54 Am. Jur., Trusts, recites: "Active conduct on the part of the grantee to bring about the conveyance, especially where there is a fiduciary or confidential relationship between him and the grantor, and the grantee's subsequent failure to carry out his agreement or promise to hold in trust for reconveyance,

tend to show fraud or bad faith on the part of the grantee, so as to raise a constructive trust."

This statement has been quoted with approval at least twice by this Court: Adcock, et al v. Merchants & Manufacturers Bank of Ellisville, 207 Miss. 448, 42 So. 2d 427, 430, and Pitchford v. Howard, et al, 208 Miss. 567, 45 So. 2d 142.

In Russell v. Douglas, 243 Miss. 497, 138 So. 2d 730, this Court said: "A constructive trust is a fiction of equity. It is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. The equity must shape the relief, and courts are bound by no unyielding formula."

██ █ We are of the opinion that the amended bill of complaint avers such matters as that the court should have overruled the demurrer and let all the facts relative to the transaction be developed. ██ █ However, we are directing attention to the holdings of this Court that proof of facts relied on to establish a constructive or resulting trust must be clear and convincing and ██ █ that the general rule is that oral evidence offered to prove such facts must be received with caution. Conner, et al. v. Conner, et al., 238 Miss. 471, 119 So. 2d 240, and authorities there cited.

The case is affirmed on cross-appeal. On direct appeal it is reversed and remanded for development of all the facts.

Affirmed on cross-appeal; reversed and remanded on direct appeal.

*McGehee, C. J., and Ethridge, Gillespie and McElroy, JJ.,* concur.

## ON SUGGESTION OF ERROR

The Court called for answer to appellee's suggestion of error. After carefully reconsidering the arguments of appellee we are of the opinion that the suggestion of error should be overruled, however, that said in our original opinion concerning the doctrine of estoppel by laches should be clarified.

We said that no period of time short of the statute of limitations can be used as supporting any laches which will constitute an equitable bar to the suit, citing Waldrop v. Whittington, 213 Miss. 567, 57 So. 2d 298. Appellee correctly points out that the rule just stated applies only when time is the only factor. She points out that she relied also upon the fact that when the suit was filed Dan Sojourner was dead, thus making it difficult or impossible to defend the case. It is contended that appellant thus obtained an unjust advantage as a result of her delay in asserting the claim. We considered the fact that Dan Sojourner was dead, along with all the other circumstances, and after reconsideration, we reaffirm our holding that the chancellor was in error when he applied the doctrine of estoppel by laches after considering only the facts averred in the complaint.

Suggestion of error overruled.

*McGehee, C. J., and Ethridge, McElroy and Jones, JJ.,* concur.