667 So.2d 616 (1995)
In the Matter of the Estate of Rosa Lee DAVIDSON: Jimmy L. Davidson, Administrator of the Estate of Rosa Lee Davidson and Jimmy L. Davidson, Individually,
v.
Donald DAVIDSON, Peggy M. Davis, Tim Davidson, Terry Davidson, Todd Davidson, and Tammy Davidson.
No. 92-CA-01280-SCT.
Supreme Court of Mississippi.
December 21, 1995.
*617 James S. Gore, Houston, for appellant.
Daniel J. Davis, Tupelo, for appellee.
Before DAN M. LEE, C.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:

INTRODUCTION
This case presents the Court with an opportunity to address the law regarding the imposition of constructive trusts surrounding a somewhat unusual situation concerning a bad-faith claim involving payment of life insurance proceeds. We find that this case was improperly decided as a matter of law because the trial court found that the beneficiary was properly changed, yet nevertheless imposed a constructive trust in favor of the heirs at law. The requirements for a constructive trust were not found by the chancellor, which should have prohibited him from awarding the heirs at law any of the proceeds from the antecedent bad-faith claim. Accordingly, the trial court must be reversed and the issue rendered by this Court.

STATEMENT OF THE FACTS
The facts of this case began when Jack and Rosa Lee Davidson purchased two $1,000 life insurance policies from Atlantic American [hereinafter American] on June 22, 1982. Originally, Jack was named as the beneficiary of Rosa's policy and their son, Jimmy, was named as the beneficiary of Jack's policy because Jack felt that Rosa would die before him. Jack, however, died of cancer before Rosa. Nevertheless, once Jack discovered that he was terminal with cancer and was given six months to live, Jack asked Jimmy to get a change of beneficiary form for Rosa's policy so that she could change her beneficiary from Jack to Jimmy.[1] Rosa and Jack intended for the $1,000 to be applied toward their respective burial costs.
As anticipated after being diagnosed with terminal cancer, Jack predeceased Rosa on September 27, 1983,[2] followed by Rosa's death on October 28, 1983. After Rosa's death, Jimmy submitted Rosa's policy to American which denied coverage. Jimmy instituted bad-faith proceedings against American which were ultimately settled for $110,000. The proceeds of the bad-faith settlement are involved in this case. The events surrounding the change of Rosa's beneficiary form from Jack to Jimmy and the capacity in which the bad-faith proceeding was conducted by Jimmy make up the majority of the testimony.
Donald and Peggy Davidson, Rosa's children and appellees, testified that it was their understanding that Jimmy was suing American on behalf of all of Rosa's heirs with *618 attorneys Hood and Sibley representing them.[3] Jimmy, his and the appellees' brother Stuart, and defendants Hood and Sibley, all testified that there were never any representations to the appellees that they were representing the appellees in the bad-faith claim. It was their contention that they clearly and unambiguously informed all of the siblings that they were representing Jimmy in his individual capacity as the named beneficiary and not as Administrator of the Estate or on their behalf. The appellees never produced the written contract and its existence was refuted by one of their own siblings, Stuart, who they alleged had signed the lost contract. In fact, Stuart Davidson corroborated Jimmy's story that no agreement had been made between the siblings to that effect and that all of the siblings had been explicitly told that the bad-faith claim belonged solely to Jimmy and not to Rosa's Estate.[4]
Donald and Peggy additionally challenged the adequacy of the change of beneficiary of Rosa by testifying that she was not competent and that Jimmy had exerted undue influence over her. However, Jimmy also produced several witnesses, including Rosa's sitter and pastor, A.C. Gore, with whom she had close and frequent contact immediately before her death, who testified that she was competent and coherent.
Peggy admitted to not having known about the lawsuit until it was filed when she previously testified that the contract, which was never produced, purportedly had to be signed before the suit could commence. Peggy also testified that she was not promised any money until after Jimmy had settled the bad-faith claim. The story does not match. The record reflects that neither Peggy nor Donald spent much time with Rosa and did not even attend the funeral of either parent. Peggy's memory and relationship with her parents was impeached by her confessed alcoholism as well.

STATEMENT OF THE CASE
The procedural history of this case began with the filing of the complaint on behalf of Donald Davidson, Peggy Davidson, and Ann Davidson, Individually and as Mother and Next Friend of Tim Davidson, Terry Davidson, Todd Davidson, and Tammy Davidson [hereinafter appellees][5] against Jimmy L. Davidson, Administrator of the Estate of Rosa Lee Davidson, and Jimmy L. Davidson, Individually.[6] The appellees alleged that Jimmy had orally and in writing[7] agreed with all of the other heirs, including Stuart, to represent them and equally divide amongst all of them any proceeds received as a result of the bad-faith suit against American for failure to pay on the $1,000 life insurance policy of Rosa. Jimmy denied in his Answer ever having agreed to represent the other heirs of Rosa and that the settlement of the claim against American was done in his individual capacity as beneficiary and not on behalf of the Estate as he alleged that the Estate was never entitled to any funds arising from the bad-faith claim.
*619 The appellees subsequently amended their complaint to include the ground of undue influence and estoppel. The estoppel argument was founded on the basis that the lower court should take judicial notice of Jimmy's pleadings from the administration of Rosa's estate. Specifically, as evidenced by Exhibit # 5, Jimmy, in petitioning the lower court for approval to permit him to contract for professional representation in a suit to recover the proceeds of Rosa's policy, as well as "any cause of action which may exist pertaining thereto," did state to the lower court that he was requesting said representation "for authority and authorization to employ said attorney [James M. Hood, Jr.] to bring the appropriate action(s) necessary to acquire a recovery for the Estate." The actual contract approved for Authorization To Represent named the contracting parties as between James M. Hood, Jr. and Jimmy, individually and as Administrator together with the "heirs of Rosa L. Davidson's Estate." However, the contract was only signed by Jimmy as an individual and not as the Administrator which was left blank. The Decree Approving Contract of Professional Representation appears ambiguous as to for whom the decree was authorizing representation.[8]
The appellees then sought to have the trial court declare that there was no attorney-client privilege between the Administrator (Jimmy) and the attorney for the Estate, to the exclusion of the other beneficiaries, heirs-at-law, and interested parties, which was granted. However, in the same paragraph of the Order granting the requested waiver, this Court notes that the lower court stated:

The settlement proceeds in the Federal District Court proceeding styled Davidson vs. Atlantic American Insurance Co., which are also the subject matter of this cause, are not now, have not been nor have they ever been a part of the assets of the estate of Rosa Lee Davidson, deceased.
(Emphasis added).
After the trial court ruled upon the privileges, Roy O. Parker withdrew as appellee counsel substituting Dan Davis. Three months later, Jimmy's counsel for the bad-faith settlement, James M. Hood, Jr. and John D. Sibley, were joined as defendants in this case by Dan Davis.[9] The original chancellors, W.W. Brand, Jr. and Robert L. Lancaster, recused themselves and Chancellor John C. Ross, Jr. of the First Chancery Court District of Mississippi was substituted.
The case proceeded to trial on September 1, 1992, with a recess in the interim, and concluded on November 2, 1992. The amended complaint named three defendants, Jimmy Davidson, John D. Sibley, and James M. Hood, Jr., all of whom were represented by independent counsel throughout the trial. The appellees called ten witnesses before the two defendant attorneys were granted their partial summary judgment motion and motion to dismiss.[10]
The trial continued against Jimmy who called seven witnesses before resting his case. The appellees called two rebuttal witnesses before resting their case. Subsequently, the trial court entered its ruling on November 30, 1992, wherein it imposed a constructive trust against Jimmy.
Aggrieved by the lower court's ruling, Jimmy filed his notice of appeal and seeks review by this Court of the following issues:
I. THE CHANCELLOR ERRED AS A MATTER OF LAW IN FINDING THAT THE APPELLANT, JIMMY L. DAVIDSON, HELD MONIES HE HAD COLLECTED AS A RESULT OF HIS BAD FAITH CLAIM AGAINST ATLANTIC AMERICAN LIFE INSURANCE COMPANY IN CONSTRUCTIVE TRUST.

*620 II. THE CHANCELLOR ERRED IN FINDING THAT APPELLANT HELD MONIES IN A CONSTRUCTIVE TRUST SINCE THE PLEADINGS OF APPELLEES MAKE NO MENTION OF NOR DO THEY SEEK THE ESTABLISHMENT OF A CONSTRUCTIVE TRUST.

DISCUSSION OF ISSUES

I. THE CHANCELLOR ERRED AS A MATTER OF LAW IN FINDING THAT THE APPELLANT, JIMMY L. DAVIDSON, HELD MONIES HE HAD COLLECTED AS A RESULT OF HIS BAD FAITH CLAIM AGAINST ATLANTIC AMERICAN LIFE INSURANCE COMPANY IN CONSTRUCTIVE TRUST.
This Court long ago stated the definition of a constructive trust in Saulsberry v. Saulsberry, 223 Miss. 684, 78 So.2d 758 (1955) as follows:
A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
Id. at 690, 78 So.2d at 760; See also, Alvarez v. Coleman, 642 So.2d 361, 367 (Miss. 1994); Planters Bank & Trust Co., v. Sklar, 555 So.2d 1024, 1034 (Miss. 1990); Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963).
This Court has also stated that "It is the relationship plus the abuse of confidence imposed that authorizes a court of equity to construct a trust for the benefit of the party whose confidence has been abused." Lipe v. Souther, 224 Miss. 473, 484, 80 So.2d 471, 475 (1955) (emphasis added), quoting Summer v. Summer, 224 Miss. 273, 80 So.2d 35, 37 (1955); Alvarez, 642 So.2d at 368. Additionally, clear and convincing evidence is required to establish a constructive trust. Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1034 (Miss. 1990); Allgood v. Allgood, 473 So.2d 416, 421 (Miss. 1985); Shumpert v. Tanner, 332 So.2d 411, 412 (Miss. 1976); Sojourner v. Sojourner, 247 Miss. 342, 356, 153 So.2d 803, 809 (Miss. 1963). Furthermore, as the final appellate Court in Mississippi, our standard of review of findings of fact, including those regarding a constructive trust, is limited in that we must not set aside a chancellor's findings of fact so long as they are supported by substantial credible evidence. Allgood, 473 So.2d at 421. However, this Court retains a de novo review of all questions of law, including those regarding the applicability of a constructive trust. Seymour v. Brunswick, 655 So.2d 892 (Miss. 1995); Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss. 1990). This Court finds that this case is a pure question of law.
In order for the trial court to have properly imposed a constructive trust, it must have found that there was a confidential relationship between Rosa and Jimmy,[11]plus substantial credible evidence that Jimmy abused said relationship to obtain a right or property which he ought not, in equity and good conscience, hold and enjoy. The following is the finding of the trial court which appears deficient in reviewing the question of law de novo to support a constructive trust against Jimmy.
2. Before her death Rosa L. Davidson signed a change of beneficiary form. This form was to change the beneficiary on a $1,000.00 life insurance policy from her husband to her son, Jimmy L. Davidson, defendant in this matter.

3. After Rosa L. Davidson's death, the insurance company, (Atlantic American) failed to pay its obligation. Suit was instituted for collection of the $1,000.00 policy amount and for punitive damages. This suit was eventually settled for $110,000.00 (One Hundred Ten-Thousand Dollars).

*621 4. The Court finds that Rosa L. Davidson had no intent to transfer monies to Jimmy L. Davidson other than the face amount of the policy. Therefore, the Court finds that the defendant, Jimmy L. Davidson, has been holding this money in a constructive trust for the benefit of the heirs of Rosa L. Davidson. The amount of monies being held in constructive trust is the actual amount paid to Jimmy L. Davidson out of the $110,000.00 settlement after deductions for attorneys fees, court costs and expenses.

....
IT IS THEREFORE ORDERED AND ADJUDGED that a judgment in the amount of $110,000.00 less deduction for attorney fees, Court costs and expenses previously paid, is hereby rendered against Jimmy L. Davidson, and Jimmy L. Davidson is Ordered to make distribution of this amount among the heirs of Rosa L. Davidson as specified herein. This opinion when signed by the Court becomes the Judgment of the Court.
(emphasis added).
In analyzing the aforementioned holding of the chancellor, this Court finds that the chancellor made the following findings: (1) Rosa validly signed a change of beneficiary form naming Jimmy as the beneficiary before she died; (2) Rosa intended that Jimmy be the sole beneficiary of the life insurance policy; and (3) There was no unconscionable or inequitable wrong exerted by Jimmy over Rosa to obtain the rights as beneficiary to the policy.
In summary, it appears to this Court that the trial court found that Jimmy was the legal beneficiary of the policy and that he was in no manner responsible for committing any sort of wrong against Rosa. The trial court found that Rosa did "not intend to transfer any monies other than the face amount of the policy." (emphasis added). Such a holding lacks any foundation in reason because there was no money other than the $1,000 that Rosa could have possibly contemplated transferring before her death. The bad-faith cause of action did not and could not have arisen until after Rosa died and until after requested payment on the policy was subsequently denied by the insurance carrier. Accordingly, this Court finds that the trial court made an incorrect judgment of law as there was no finding of an abuse of confidence to support the imposition of a constructive trust as required by Alvarez, Lipe, Sklar, Sojourner and Summer. Therefore, in giving the deference due to the chancellor's findings of fact, and in reviewing the decision of law de novo, this Court finds that the chancellor's imposition of a constructive trust against Jimmy must be reversed and rendered as it was incorrect as a matter of law.

II. THE CHANCELLOR ERRED IN FINDING THAT APPELLANT HELD MONIES IN A CONSTRUCTIVE TRUST SINCE THE PLEADINGS OF APPELLEES MAKE NO MENTION OF NOR DO THEY SEEK THE ESTABLISHMENT OF A CONSTRUCTIVE TRUST.
Having decided that the case should be reversed and rendered because of the mistake of law by the chancellor, this issue need not be addressed by the Court.

CONCLUSION
The trial court found that Rosa validly, and without any inequitable or unconscionable wrong committed against her, changed the beneficiary on the policy in question to Jimmy. Jimmy, as the sole legal beneficiary, was the only person with a legal interest in the policy; not the estate, not Donald, nor any of the other children. Therefore, Jimmy, and Jimmy alone, could have collected the thousand dollars originally or been able to institute a bad-faith suit against American once it denied coverage. See Westmoreland v. Raper, 511 So.2d 884, 885 (Miss. 1987) (Generally no direct action can be maintained by a third party on an insurance policy absent some specific statutory authority.)
The person to whom it was denying coverage was the beneficiary, Jimmy. The appellees were third parties who were not part of the life insurance policy and who were thereby prohibited from having been able to originally maintain a cause of action against *622 American for bad-faith in the first place.[12] Therefore, as the only person entitled to collect the thousand dollars, and as the only person to whom coverage was denied, Jimmy was the only person entitled to any proceeds that resulted from the bad-faith settlement. Accordingly, the Estate and the heirs at law of Rosa had no legal interest upon which to collect said proceeds and the chancellor erred as a matter of law in imposing a constructive trust against Jimmy. This case is reversed and rendered as there are no issues to be resolved on any remand.
REVERSED AND RENDERED.
DAN M. LEE, C.J., and PRATHER and SULLIVAN, P.JJ., and PITTMAN, BANKS, McRAE, SMITH and MILLS, JJ., concur.
NOTES
[1] Said occurrence was according to Jimmy's and his wife, Joanne's testimony. Jimmy and Joanne were present when Jack asked Rosa to change her beneficiary from Jack to Jimmy. Jimmy, Joanne and their daughter all testified to having been present when Rosa signed the form herself and acknowledged that she wanted and knew what she was signing and doing.
[2] Jack Davidson's policy was paid to Jimmy without any problems and is not involved in this case.
[3] Exhibit # 7 is a letter to Donald wherein attorney Hood states that Jimmy was his client. There are some innuendos that Donald might have taken to mean that Donald was a client as well. However, a complete reading of the letter explicitly states that Jimmy was his client.
[4] Much of the trial testimony surrounded a meeting sometime around November of 1984 wherein Jimmy and all of the appellees met with John Sibley and James Hood. There were material disputes over who said what with Donald and Peggy testifying that Mr. Hood and Mr. Sibley never informed them that they were representing Jimmy individually and not on behalf of the estate or any other heir of Rosa. The appellees disputed that Hood and Sibley informed them that any proceeds from the bad-faith suit would belong to Jimmy alone to do with as he wished.
[5] The children of Rosa Lee and Jack Davidson were Jimmy, Donald, Peggy, Shed, and Stuart. Stuart did not join Donald, Peggy and Shed's children in this lawsuit and instead was a material witness on behalf of Jimmy.
[6] Ann Davidson was subsequently deleted as an individual plaintiff but remained as a plaintiff as Mother and Next Friend of her four children. Ann Davidson was divorced from Shed Davidson, a deceased son of Rosa Lee.
[7] However, the alleged written contract was never produced. The record also appears to refute its existence as well.
[8] The record does not reflect any exchange during the trial regarding the estoppel argument, supra, or the lower court's, infra, apparent recognition that any bad-faith proceeds would not belong to Rosa's Estate.
[9] William Walker, Jr. was associated as a negotiator toward the end of the bad-faith settlement process. Walker was implicated in the motion to amend plaintiffs' complaint and the Answer of John D. Sibley, but was subsequently removed from the litigation.
[10] Said summary judgment motion is not involved in this appeal.
[11] There appears to have been the requisite confidential relationship between Jimmy and Rosa because he was in charge of handling Rosa's affairs after Jack died and Rosa lived with Jimmy's family who took care of her until her death.
[12] There was no evidence of a third party beneficiary theory involved in this case.