William Roberts WILSON, Jr., et al.   Plaintiffs

v.

Richard F. SCRUGGS, et al.   Defendants

No. CIV.A. 3020CV525LN.

United States District Court, S.D. Mississippi, Jackson Division.

April 25, 2005.

Van Douglas Gunter, Vicki Slater, William B. Kirksey, Kirksey & Associates, Jackson, Charles M. Merkel, Cynthia Inis Mitchell, Merkel & Cocke, Clarksdale, MS, for Plaintiffs.

Jack F. Dunbar, Holcomb Dunbar, P.A., Oxford, Joseph C. Langston, Timothy Reese Balducci, The Langston Law Firm, P.A., Booneville, MS, Bryan Nelson, P.A., Mark A. Nelson, Hattiesburg, MS, C. Michael Ellingburg, Daniel, Coker, Horton &

Bell, Jackson, MS, E. Kirk Wood—PHV, Birmingham, AL, John G. Jones, Jones, Funderburg & Sessums, Daniel Martin Weir, Markow Walker, P.A., Jeffery P. Reynolds, Jeffery P. Reynolds, P.A., Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

A number of motions filed by defendant are pending before the court at this time, including (1) Scruggs' motion for summary judgment on Wilson's claim for constructive trust; (2) defendants' motion to exclude, in part, the proffered testimony of Saul Solomon and Charles N. Dennis, and for dismissal of constructive trust claims; and (3) Scruggs' motion for partial summary judgment seeking preclusive effect of all state court orders.[1] In addition, Wilson has moved for an immediate trial setting. The parties have fully briefed these motions and the court, having reviewed the parties' arguments and submissions and having considered additional pertinent authorities, concludes (1) that genuine issues of material fact exist with respect to Wilson's claim for constructive trust and that consequently the motion for summary judgment on the constructive trust claim must be denied; (2) that the motion to strike, in part, the testimony of Wilson's expert Saul Solomon will be denied for reasons explained *infra;* (3) that consideration of the motion for partial summary judgment as to the preclusive effect of state court orders will be stayed, pending final resolution of the state court litigation; and that Wilson's motion for an immediate trial setting will be denied.

---

1. The court's docket report reflects a number of additional motions as pending but those motions pertain to the plaintiff-intervenor Alwyn Luckey, whose claims have recently been severed and transferred to the district court in the Northern District of Mississippi.

Scruggs has offered four principal arguments in support of their request for summary judgment on Wilson's claim for constructive trust. First, he argues that (1) there was no fiduciary or confidential relation between Wilson and Scruggs at any time relevant to this dispute, the breach of which could support the imposition of a constructive trust; (2) Wilson cannot show the existence of a "res" or any identifiable or definite property purportedly held by Scruggs wrongfully; (3) the monies on which Wilson seeks the imposition of a constructive trust cannot be shown to be the direct product of any money allegedly misappropriated from Wilson; and . (4) there can be no viable claim for the equitable remedy of constructive trust inasmuch as Wilson has an adequate remedy at law.

> "A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *In re Estate of Abernathy*, 778 So.2d 123, 126 (Miss.2001). To prove such a trust should be imposed by this Court, a confidential relationship must be proven plus an abuse of confidence. *McNeil v. Hester*, 753 So.2d 1057 (¶ 25) (Miss.2000) (quoting *Davidson v. Davidson*, 667 So.2d 616, 620 (Miss.1995)). This must be proven by clear and convincing evidence. *Id.*

*Snoddy v. Snoddy*, 791 So.2d 333, 343 (Miss.App.2001).

In response to defendants' contention that Wilson cannot validly claim a constructive trust as there is no allegation or proof of fraud on the part of Scruggs and as the requisite fiduciary . or confidential relation is lacking, Wilson maintains that as partners and/or joint venturers (in Asbestos Group, P.A.), a fiduciary relationship existed as a matter of law between him and Scruggs. *See Rice v. Williams*, 387 So.2d 733, 735 (Miss.1980) (fiduciary relationship exists between partners); *Evanovich v. Hutto*, 204 So.2d 477, 479 (Miss.1967) (recognizing that a "partnership [is] a fiduciary relationship"). He further argues .that in accordance with established principles of law, this relationship did not cease upon dissolution of the partnership/joint venture but rather continued during the process of winding up the affairs of the partnership/joint venture, which included the collection and disbursement of settlement proceeds. *See* Miss. Code Ann. § 79–12–59 ("[O]n dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed."); *Old Harbor Native Corp. v. Afognak Joint Venture*, 30 P.3d 101, 106 (Alaska 2001) ("withdrawal of a member or some other dissolution-triggering event does not end the relationship among the joint venturers because the process of winding up includes the accounting and division of the venture's assets and debts"). He argues additionally and/or alternatively that the August 1992 dissolution agreement itself created an express trust, by which Scruggs agreed to "act for and on behalf of Wm. Roberts Wilson, Jr. and Wm. Roberts Wilson, Jr., P.A. on all matters herein and to speedily, efficiently and diligently collect and disburse any funds and further agree[s] to do all acts required of [him] and enumerated herein for and on behalf of Wm. Roberts Wilson, Jr. and Wm. Roberts Wilson, Jr., P.A."

The nature of the relationship that must exist as a prerequisite to imposition of a constructive trust need not necessarily strictly qualify as a fiduciary relationship:

"While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. *An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one. The origin of the confidence reposed is immaterial. A confidential relationship within the rule need involve neither a promise for the benefit of another nor an express fiduciary relationship.*"

*Sojourner v. Sojourner,* 247 Miss. 342, 354, 153 So.2d 803, 807–808 (Miss.1963) (emphasis added) (quoting 54 Am.Jur., *Trusts,* Sec. 225.).[2] To resolve the present motion, it is not necessary that this court definitively determine whether the fiduciary relationship which arose and existed because of the partnership/joint venture between Scruggs and Wilson (known as Asbestos Group, P.A.),[3] continued beyond execution of the August 1992 dissolution agreement,[4] for in the court's opinion, Scruggs' explicit assumption of trust duties in the August 1992 agreement itself, dooms Scruggs' contention that as a matter of law there is no basis for finding a relationship between the parties such as would support a constructive trust remedy.[5]

2. In addition to his specific allegation of a confidential or fiduciary relationship between him and Sruggs, Wilson also states that, unbeknownst to him, at the time the August 1992 agreement was entered, there had already been a settlement with at least one defendant in the "second round" of asbestos litigation, General Electric Company, and yet Scruggs specifically represented in the agreement that there had been no settlements with any second round defendants as of the date of the agreement. In other words, Wilson charges that Scruggs committed affirmative fraud toward him by causing the GE settlement to be paid to him at the rate of 10% as if it was a new settlement reached after his departure rather than at the 40% rate to which he was entitled on all pre-August 1992 settlements.

3. The court acknowledges defendants' position that Asbestos Group, P.A. was merely an "administrative corporate entity" established only to perform the administrative and ministerial functions of the venture. However, it is noted that both the articles of incorporation of Asbestos Group, P.A. and the August 1992 dissolution agreement recited that the corporation was formed for the purpose of "engag[ing] in the general practice of law and to prosecute asbestos victims' claims." Moreover, the state court specifically rejected Scruggs' argument that Asbestos Group was a mere administrative entity.

4. As Wilson points out, numerous cases have held that the fiduciary duties of partners continues until the partnership affairs are wound up following dissolution of the partnership. *See, e.g., Chaney v. Burdett,* 274 Ga. 805, 560 S.E.2d 21, 23 (2002); *Kahn v. Mesher,* No. 45507–9–I, 103 Wash.App. 1005, 2000 WL 1584448, at *2 (Wash.App. Oct. 23, 2000); *see also Larry Karchmar, Ltd. v. Nevoral,* 707 N.E.2d 223, 226–27 (1999) (agreement between attorneys to share fees creates a joint venture, and corresponding fiduciary duty, which continues until the profits of the joint venture are distributed). The state court concluded that no fiduciary duty continued beyond the date of execution of the dissolution agreement, which agreement, it concluded, did "wind up" the affairs of the partnership/venture.

5. It does appear to the court, contrary to Wilson's urging, that the August 1992 dissolution agreement had the effect of ending Wilson's *participation* as a partner or joint venturer in Asbestos Group, P.A. However, that does not mean that the affairs of the business, vis-a-vis Wilson, had been conclud-

■ Scruggs next argues that Wilson cannot prevail on his claim for constructive trust as he can establish no "res" or identifiable or definite property purportedly held by Scruggs wrongfully, but rather merely a disputed debt between the parties. The court does not view this case as being simply about an alleged debt owed by Scruggs to Wilson, but rather about Scruggs' alleged failure to turn over to Wilson funds which Scruggs had collected from others on Wilson's behalf and which Scruggs had expressly agreed to disburse to Wilson. That is to say, in the court's opinion, it cannot reasonably be contended that the relationship between Wilson and Scruggs was a strictly a debtor-creditor relationship. Moreover, Wilson has presented evidence of specific amounts collected by Scruggs which he maintains properly belonged to Wilson, which amounts were either spent by Scruggs directly on the tobacco enterprise or were commingled in accounts of various Scruggs entities from which the funds were routed to the tobacco enterprise.[6] *See* W. Fratcher, v. *Scott on Trusts* § 516 (1989) ("Where money of the claimant is mingled with money of the wrongdoer and the mingled fund is used in acquiring other property, the claimant is entitled to follow his money into the property thus acquired.").

Of course, the court recognizes Scruggs' assertion that while he did eventually stop making payments to Wilson under the 1992 dissolution agreement, he did so only after the parties were deeply involved in the state court litigation and Wilson had taken the position that the 1992 agreement was void. Scruggs further insists (and has presented his own expert's calculations to support his position) that at no time prior to that did he withhold any money belonging to Wilson and that at no time before or after that did he *wrongfully* withhold funds properly belonging to Wilson. This court, however, is charged to construe the facts, including disputed facts, in the light most favorable to the plaintiff, *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); and viewed in that light, the court is unable to conclude on the basis of the evidence of record that Scruggs did not wrongfully misappropriate money rightfully belonging to Wilson. Nor is the court able to determine, as a matter of law, that no money owing to Wilson was directed to the tobacco litigation. Accordingly, the court cannot conclude that summary judgment is proper on this basis.[7]

■ As for Scruggs' contention that the availability of an adequate legal remedy forecloses a claim for equitable relief,

---

ed, for under the terms of the agreement, Wilson retained an interest in the effectuation, collection and disbursement of settlements on behalf of clients of Absestos Group as of the date of the agreement.

**6.** Scruggs has moved to exclude certain portions of the testimony of Wilson's accounting expert, Saul Solomon. However, the motion to strike does not go to plaintiff's experts' testimony and evidence relating to his calculation of money due Wilson under the agreement, commingling of Wilson's money in bank accounts of Scruggs' entities, the amount of money expended on the tobacco litigation, or Scruggs' ability (or lack thereof) to fund the tobacco litigation without Wilson's money. Given that this evidence is not the

subject of defendants' motion to strike, it is properly before the court and obviously may be considered in evaluating whether Scruggs has sustained his burden to establish the absence of any genuine issue of material fact.

**7.** The court would agree with Scruggs, however, that to the extent of any money that Scruggs reasonably and legitimately believed was rightfully his under the terms of the August 1992 dissolution agreement, his use of such money, even if such money is ultimately proven to have belonged to Wilson, would not have been wrongful or in violation of any fiduciary (or quasi-fiduciary) duty that may have been owed to Wilson.

the court does acknowledge that as a general proposition, equitable relief (a category which encompasses constructive trusts) is unavailable to a party who has an adequate remedy at law. *See Bowling v. Madison County Bd. of Sup'rs*, 724 So.2d 431, 434 (Miss.App.1998) ("The more traditional analysis is that injunctive or other equitable relief . . . is unavailable if there exists an adequate remedy at law. . . ."). At the same time, however, it is clear that a principal premise of the constructive trust remedy is that is necessary and available in certain circumstances as a means of preventing unjust enrichment. Thus, it has been recognized that while

> [i]n most cases where a constructive trust is enforced against one person in favor of another, the result is to restore the status quo, [t]here are other cases . . . in which a constructive trust is enforced against a defendant, although the loss to the plaintiff is less than the gain to the defendant, or, indeed, where there is no loss to the plaintiff. Thus, if the defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff. So also where the defendant wrongfully uses the property of the plaintiff in making a profit, he can be compelled to surrender the profit. The defendant will not be permitted to retain the profit in such cases even though there has been no loss to the plaintiff. The defendant should not be permitted to enrich himself by retaining the profit, and will therefore be compelled to surrender it to the plaintiff. In

these cases the effect of enforcing a constructive trust is not merely to put the parties in statu quo.

W. Fratcher, V *Scott on Trusts* § 462.2, at 317–18 (1989).[8] In such cases, although a legal remedy may adequately redress the plaintiff's loss, the equitable remedy nevertheless remains available to prevent the defendant's unjust enrichment. *Id.* In the court's opinion, it cannot be said as a matter of law, upon construing the facts of record in the light most favorable to Wilson, that this case does not fit within this category of cases. Accordingly, the court cannot conclude that summary judgment is proper on this basis.

Scruggs next argues that constructive trust is not available as a remedy in the case given the nature of the profits at issue. More to the point, he argues that a constructive trust is an appropriate remedy only if the property on which imposition of a constructive trust is sought is the "direct product" of Scruggs' alleged wrongful misappropriation of Wilson's money. Scruggs notes in this regard that "[t]he phrase 'direct product' means that which is derived from the ownership or possession of the property *without the intervention of an independent transaction by the possessor,*" *Restatement (First) of Restitution* § 157 (1932 and supp.2004) (emphasis added), and argues that he obviously did not earn his tobacco fees by simply purchasing a lottery ticket but rather earned the fees by reason of his own efforts, skill and diligence.

The court would certainly agree that the situation presented here (assuming the facts are as claimed by Wilson) is hardly analogous to a trustee's buying a lottery

---

8. *See also Scott on Trusts* § 503 ("[W]here a trustee uses trust property for his own benefit, he is accountable to the beneficiaries. The same principle is applicable to other fiduciaries. Thus where an agent in violation of duty to his principal uses property of the principal and makes a profit thereby he is accountable for the profit so made. The same principle . . . is applicable where the wrongdoer is not a fiduciary. Thus where one person wrongfully uses the property of another and acquires property in exchange for such wrongful use, he is constructive trustee of the property so acquired.").

ticket with trust monies. The fees generated by the tobacco litigation obviously did not result from a mere investment of money. Rather, the fact that fees were generated at all is attributable predominantly to the efforts of Scruggs and others involved in the initiation and prosecution of the litigation. That is to say, undeniably, at least as between the parties herein, the principal factor in the success of the tobacco litigation, by far, was Scruggs' (and other associated professionals') time, talents, skills, connections, et cetera. On the other hand, it is also undeniable that an investment of money was essential to the ultimate success of the tobacco undertaking, without which the litigation would never have gotten off the ground. Accordingly, whereas the money alone would have been useless in the tobacco undertaking, the efforts of the attorneys alone, without funding for the litigation, would have been fruitless. Thus, a constructive trust would not necessarily be unavailable if one were to conclude that some of the money used to fund the litigation was money that belonged to Wilson and that such money, even if only to a limited (or even very limited) extent, contributed to the overall success of the venture and hence the profits generated thereby. That is to say, the fact of the comparatively slight role Wilson's claimed money played in the success of the litigation does not necessarily foreclose the remedy he seeks.[9]

For all of these reasons, the court cannot conclude that summary judgment is proper and accordingly concludes that Scruggs' motion should be denied. That brings the court to Wilson's motion for a

---

**9.** Wilson's experts, Soloman and Dennis, have calculated that anywhere from 29.02% to 39.09% of the funding for the tobacco litigation came from Wilson's share of asbestos fees which were wrongfully misappropriated by Scruggs and directly expended on the tobacco litigation or commingled with other Scruggs accounts which were used for the tobacco litigation, and have based their calculation of the share of tobacco fees allegedly due Wilson based on these percentages of all tobacco fees earned. Scruggs has moved to strike the testimony of both these experts to the extent that either attempts to "relate" any funds due to Wilson that were "invested" by defendants in the tobacco litigation expenses as a basis for their opinion that Wilson is entitled to a pro rata share of Scruggs' tobacco fees in the same ratio as his money was used to finance the tobacco litigation.

The court agrees that an analysis which compares only dollars expended on the litigation to fees generated and which does not take into account the overwhelming importance of Scruggs' own efforts (as well as the efforts of others) to the success of the tobacco litigation is not especially illuminating. While constructive trust is potentially an appropriate remedy to prevent *unjust* enrichment by Scruggs on account of his alleged use of Wilson's funds in the tobacco litigation, the court would not necessarily consider Scruggs' enrichment "unjust" to the extent that the overwhelming factor in the tremendous (indeed, unprecedented) financial success of the tobacco litigation in terms of fees generated was the efforts of Scruggs and others involved in pursuing the litigation. *See Rodeway Inns Int'l, Inc. v. Amar Enter., Inc.*, 742 F.Supp. 365, 369 (S.D.Miss.1990) ("Equity requires that any profits awarded to plaintiff be based, to the extent possible, on a realistic approximation of profits attributable to the infringement."); *Cadwalader, Wickersham & Taft v. Beasley*, 728 So.2d 253, 258 (Fla.App.1998) ("To the extent that some of the firm's post-dissolution profits may be attributable to the postdissolution efforts, skill, and diligence of the remaining partners, the firm's fee as a result of those services should not be proportionately attributable to the use of the departed partner's right in the property of the dissolved partnership."). That having been said, the court declines to strike the challenged testimony as inadmissible, but does consider that it may be entitled to little weight in view of what the court considers a fair analysis of the issues presented.

Wilson's related motion to strike exhibits submitted by Scruggs with his rebuttal on the motion to strike and Wilson's incorporated motion to file a surrebuttal on the motion to

trial setting,[10] and Scruggs' motion for summary judgment based on preclusive effect of state court orders.

■ The court indicated at its recent conference with the parties that its inclination was that in the event Scruggs' summary judgment motion were to be denied, this court would stay further proceedings in this case pending conclusion of the state court litigation. In filings with the court both before and after that conference, Wilson has insisted that the pendency of the state court case is not a basis for the court's delaying resolution of this case and thus he seeks a trial setting in order that the case may be tried and promptly resolved. He notes, in this vein, that this court has heretofore consistently declined to stay consideration of the case and that nothing has changed which should affect the court's view of the issue. In particular, he states categorically that there is

> absolutely nothing on appeal in the Mississippi Supreme Court that will effect [sic] the calculation of asbestos fees due Wilson nor will the imposition of a constructive trust over the Defendants' property in this case be affected by anything pending in the state court. There is nothing that has happened in any court anywhere, that will conflict or preclude the calculation of the asbestos fees due to Wilson and the imposition of a constructive trust in this case.

While that may be true, the court is nevertheless of the opinion that the better course is to allow the state court litigation to proceed first to a conclusion before proceeding further with this case. Wilson seeks the imposition of a constructive trust on money he claims is owed him by Scruggs; and yet there is no question but that to date, there has been no determination by any court of the amount due him from Scruggs. That is the precise subject of the state court litigation, and for this court to undertake to decide that issue under the guise of resolving Wilson's constructive trust claim would be to overstep its jurisdiction. This is a classic case, as it turns out, of plaintiff's, in effect, placing the cart before the horse.[11]

In addition to the motions noted, there have been numerous additional miscellaneous motions, including a motion by Wilson to file surrebuttal brief, motion by Wilson to strike evidence submitted by Scruggs with his rebuttal on the motion to exclude experts, motion by Scruggs to strike certain filings by Wilson including Wilson's surrebuttal on the constructive trust summary judgment motion and various other motions to strike. Each of these motions is denied.

strike these experts' testimony are both denied.

10. The motion for trial setting was actually filed by Luckey, but eventually was joined by Wilson, who recently completed briefing on the motion.

11. In previously declining to stay this case, the court took into consideration that it could at least proceed to the point of deciding whether constructive trust was a potentially viable claim. This it has now done, and concludes that because the specific issue of Wilson's entitlement to *asbestos* fees (a prerequi-

site to his claim for constructive trust) is before the state court, this case should be stayed pending a decision on that issue.

As for Scruggs' motion to give preclusive effect to certain orders of the state court, although the pendency of the appeal in state court does not detract from the finality of the circuit court's orders, the fact that both parties have expressed doubt that the orders will be favorably viewed by the supreme court and the fact that this court has decided to stay this case pending resolution of the state litigation, lead the court to conclude that it should reserve ruling on the motion to give the lower state court's ruling preclusive effect.