LEE, P.J.,
for the Court.
FACTS AND PROCEDURAL HISTORY
¶ 1. Barbara Parker (Barbara) and her husband, Larry Parker (Larry), owned a plot of land and a mobile home as joint tenants with the right of survivorship. Larry died in a work-related accident, and Barbara received his workers’ compensation benefits.[1] Barbara also received money from a lawsuit related to Larry’s accident and fee simple title to the subject property.
¶ 2. Shortly after Larry’s death, Barbara began a romantic relationship with Edward Bourgeois (Edward), who moved into Barbara’s mobile home. Barbara and Edward lived together unmarried for approximately fifteen years until Barbara died intestate on November 23, 2005. In 1992, Barbara and Edward opened a joint checking account out of which all living expenses were paid. In 1995, Barbara began building a house on her land. Barbara invested between $60,000 and $70,000 in building materials, and Edward withdrew $20,000 from his retirement account to invest in the home. Edward testified that all building expenses were withdrawn from the joint checking account, but he failed to produce receipts to document the expenses at trial. Edward further testified that he and Barbara had an oral agreement that in exchange for investing his funds into building the house, he would have the right to continue to live in the house after Barbara’s death until his own death, at which time the home would pass to Barbara’s children.
¶ 3. Barbara’s illnesses, which included a kidney disorder and cancer, spanned over the last six years of her life. Conflicting testimony arose during trial as to the role *879 Edward played in Barbara’s life toward the end of her battle with cancer.
¶ 4. Prior to her death, Barbara had closed the joint checking account and split the money evenly between her and Edward. Barbara also revoked a prior power of attorney she had given to Edward. She also left a note indicating she wanted her estate to repay Edward for the money he had invested in her home. The note instructed the estate to pay Edward $20,000 from a certificate of deposit. This particular certificate of deposit contained approximately $41,000 with terms stating that upon Barbara’s death, Edward would receive all the funds. Since the payment terms of the certificate of deposit had not been changed prior to Barbara’s death, Edward received all the money from the certificate of deposit. Subsequently, in hopes of continuing to live in Barbara’s home, Edward approached Barbara’s children and asked if he could remain in the home in exchange for $20,000. The heirs refused. Still living in Barbara’s home, Edward began locking the children out of the home which prevented them from accessing Barbara’s papers. When Edward denied the children access to Barbara’s ashes, the children sought to have Edward evicted from the home.
¶ 5. On April 14, 2006, Edward filed a probate claim in the Pearl River County Chancery Court against Barbara’s estate claiming he was entitled to equitable relief in the form of a constructive trust on the proceeds of the sale of Barbara’s real property. After a trial, the chancellor denied Edward’s claims, finding that he had failed to prove by clear and convincing evidence that he was entitled to a constructive trust over Barbara’s real estate. Edward filed a motion for reconsideration, which the chancellor denied. Edward now appeals, asserting the following issues: (1) the chancellor erred in finding that he did not establish a constructive trust, and (2) the chancellor erred in finding that he was not entitled to reimbursement for personal property currently retained by Barbara’s estate. Although Edward’s brief lists two issues, he only briefs this Court on the first issue. Thus, our discussion will be limited to whether the chancellor erred in finding that Edward did not establish a constructive trust. Finding no error, we affirm.
STANDARD OF REVIEW
¶ 6. This Court will not disturb findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990). Where there is substantial evidence to support the chancellor’s findings, this Court is without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). The applicability of a constructive trust is a “pure question” of law; thus, our standard of review is de novo. Davidson v. Davidson, 667 So.2d 616, 620 (Miss.1995).
DISCUSSION
¶ 7. Edward argues that the chancellor erred in finding that he did not establish a constructive trust. A constructive trust arises in order to prevent unjust enrichment by a person gaining property that rightfully belongs to someone else. McNeil v. Hester, 753 So.2d 1057, 1064(¶ 24) (Miss.2000). The supreme court has defined a constructive trust as follows:
A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way *880 against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.
Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1034 (Miss.1990) (quoting Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963)). A chancellor may “construct a trust for the benefit of the party whose confidence has been abused.” Davidson, 667 So.2d at 620. The existence of a constructive trust must be proven by clear and. convincing evidence. McNeil, 753 So.2d at 1064(¶25).
¶ 8. In support of his argument, Edward claims that a confidential relationship existed between himself and Barbara, and he relied upon that relationship and Barbara’s promises when he provided funds with which to build the house. We do note that, according to Edward’s testimony, he withdrew approximately $20,000 from a retirement account to put into the construction of the house. However, Edward stated that the funds were withdrawn in either 2000 or 2001, well after construction was finished and they were living in the house. For a “confidential relationship to exist between two persons, there must be a relation in which one person is in a position to exercise a dominant influence upon the other.” Tatum v. Barrentine, 797 So.2d 223, 230(¶ 32) (Miss.2001). The chancellor determined that there was absolutely no evidence that Barbara was in a position to exercise a dominant influence upon Edward. Rather, Edward’s testimony attempted to portray Barbara as weak, ill, and in need of constant care. The chancellor found that Edward knew their relationship was ending and made no effort to get Barbara to execute a document leaving him a life estate. Furthermore, the testimony concerning Barbara’s intent to leave Edward a life estate was conflicting at best. We find that the chancellor did not err in finding that Edward failed to prove the existence of a constructive trust by clear and convincing evidence.
¶ 9. Edward also claims that he spent in excess of $150,000 on the construction of the home and should be reimbursed. Edward included a list of expenses, but he produced no receipts. Edward also admitted that many of the expenses were paid from his and Barbara’s joint account. Finding no evidence of a constructive trust, we cannot find that Edward is entitled to reimbursement for expenses relating to the construction of the home.
¶10. THE JUDGMENT OF THE PEARL RIVER COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.

. The record does not contain the exact date of Larry’s death, but it indicates he died sometime in 1990.